**Jerry Lee FARLEY, Plaintiff,**

v.

**GIBSON CONTAINER, INC., Defendant.**

**No. 1:94CV193–S–D.**

United States District Court,
N.D. Mississippi,
Eastern Division.

July 17, 1995.

Luther C. Fisher, IV, Ellis, Ellis & Fisher, P.A., Tupelo, MS, for plaintiff.

Thomas D. Murry, Mitchell, McNutt, Threadgill, Smith & Sams, P.A., Tupelo, MS, Kathryn A. Lamme, Turner, Granzow & Hollenkamp, Dayton, OH, for defendant.

## OPINION

SENTER, Chief Judge.

In this case, plaintiff charges that defendant discriminated against him in violation of Title VII (reverse racial discrimination) and the Americans with Disabilities Act (ADA) when it terminated his employment. This cause is presently before the court on defendant's motion for summary judgment.

## FACTS

The plaintiff, Jerry Lee Farley, a white male, was employed by the defendant, Gibson Container, Inc., from November, 1983, to July, 1993. For most of Farley's tenure as a Gibson employee, he was a hand stitcher

operator. Although Gibson's employees have specific job titles and jobs, they are frequently assigned to jobs which require additional help as production needs mandate. Farley himself performed a number of different jobs at the factory for short periods of time as the need arose, including helper on the hand stitcher operator machine.

In late April, 1992, Farley suffered a work-related injury which was diagnosed as a hernia. Three days later, he underwent surgery which revealed the existence of an intramuscular mass. After suffering complications, Farley was unable to work for six weeks. At the end of that time, he was released to return to work without any formal restrictions.

For the next year, Farley continued to work as he always had. Then, in April, 1993, he began complaining of pain and dizziness when he was periodically assigned to what he considered to be heavy work. According to Farley, almost every time he was placed on a job requiring heavy lifting, his surgical scar would split, causing pain, bleeding, and nausea and forcing him to go home. When this pattern continued, Farley sought medical treatment. Between April, 1993, and July, 1993, Farley visited one doctor twice and a second doctor once. Neither doctor identified any physical cause for his complaints or gave him any work restrictions, except that one doctor suggested he find another job, such as doing light delivery or security work or driving a tow motor. Farley never presented Gibson with any work restrictions from any doctor in connection with his complaints and readily admits that, except for heavy work, he was able to perform his job as a hand stitcher operator as well as a number of other jobs at Gibson without any problems.

Farley maintains that during his last year of employment, he asked repeatedly to be reassigned to a lighter duty job, but each time that he believed he was to be given a new position, an African–American would receive the job instead. When he pressed his superiors for an explanation of these events, Farley was told that Gibson had a quota to fill and was required to place African–Americans in higher paying positions. Farley was terminated from employment effective July 6, 1993, for failure to return to work after leaving in mid-June because of his continuing health problems. After holding a number of other jobs following his dismissal, Farley is currently employed with another container manufacturer as a hand stitcher operator.

In this action, Farley maintains that he was discriminated against because of his race and his disability. With regard to his reverse race discrimination claim, he argues that he was repeatedly denied lighter duty jobs because of a quota mandating the promotion of African–American employees to better paying, lighter duty positions. As to his disability claim, Farley argues that he "had a medically cognizable physical problem," and that Gibson discriminated against him by forcing him to work on heavy duty jobs "even after [it] was made aware that it harmed him." Gibson denies these charges and requests summary dismissal of each.

## DISCUSSION

### I.

■ Having carefully considered the matter, the court is of the opinion that summary judgment is appropriate on Farley's reverse discrimination claim. Even giving Farley the benefit of the doubt, as it must, that Gibson officials made statements about quotas, this is nothing more than a mere scintilla of evidence in support of his claim and is insufficient to withstand summary dismissal. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). In response to Farley's affidavit listing African–Americans who were allegedly given preferential treatment, Gibson has produced the personnel files of those individuals which clearly show that they either filled the so-called lighter duty jobs outside the relevant time period of the EEOC charge (and no argument of a continuing violation has been made or considered) or never filled the positions at all. Under these circumstances, the court believes that "the evidence [does not] present a sufficient disagreement to require submission to a jury," *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2512, but rather "is so one-sided that [Gibson] must prevail as

a matter of law." *Id.* In other words, "reasonable jurors could [not] find by a preponderance of the evidence that [Farley] is entitled to a verdict" on his reverse discrimination claim. *Id.* In making this determination, the court has, of course, not made any credibility determinations or weighed the evidence and has drawn all *reasonable* inferences in favor of the non-movant, Farley. *See id.* at 255, 106 S.Ct. at 2513.

## II.

■■■ The Americans with Disabilities Act prohibits discrimination against qualified employees with a disability "because of the disability...." 42 U.S.C. § 12112(a). To state a prima facie case under the ADA, Farley must prove that (1) he suffers from a "disability"; (2) he is a "qualified individual"; and (3) he suffered an adverse employment action because of his disability. *Stradley v. Lafourche Communications, Inc.,* 869 F.Supp. 442, 443 (E.D.La.1994). On summary judgment, Farley need only show that there is a genuine issue of material fact on each of these elements. *Chiari v. City of League City,* 920 F.2d 311, 314–15 (5th Cir. 1991).[1]

A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds...." 42 U.S.C. § 12111(8). A "disability" is

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

"Physical impairment" is defined as

Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory ... cardiovascular, reproductive, digestive, genitourinary, hemic and lymphatic, skin, and endocrine....

29 C.F.R. § 1630.2(h)(1). "Major life activities" is defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). With respect to the major life activity of *working,*

[t]he term *substantially limits* means *significantly* restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3) (emphasis added).

■ In this case, the initial question which this court must consider is as follows: Has Farley raised a genuine issue of material fact as to whether he has a disability as that term is defined in the ADA, either because he has a physical impairment which substantially limits his ability to work or because Gibson regarded him as having such an impairment?

As previously noted, Farley argues that he "had a medically cognizable physical problem." Gibson does not dispute the fact that Farley underwent surgery in 1992 to correct a medical condition. It argues, however, that he has no medical evidence to support his complaints of not being able to "work on nothing heavy" or to "pick up like [he] did [before the surgery]." In response, Farley maintains that the failure of any doctor to give him any work restrictions

---

1. In seeking guidance for its decision, this court, as have many others, turns to cases decided under the Rehabilitation Act. That Act and the ADA are very similar, and courts frequently borrow precedent and analysis from one in interpreting the other. *See, e.g., Chandler v. City of Dallas,* 2 F.3d 1385, 1391 (5th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994); *Stradley,* 869 F.Supp. at 443

n. 1. This is consistent with Congress' adoption, in the ADA, of the definition of the word "disability" from the Rehabilitation Act definition of the term "individual with handicaps." "By doing so, Congress intended that the relevant caselaw developed under the Rehabilitation Act be generally applicable to the term 'disability' as used in the ADA." 29 C.F.R. § 1630.2(g) app.

does not change the fact ... that [he] suffered from nausea and dizziness when he was put on the heavy duty jobs ... [or] that his wound, which apparently did not heal correctly, tore open on several occasions causing it to bleed on his shirt, a condition of which he made management personnel aware.

The court is of the opinion that Farley has failed to raise a genuine issue of material fact to show that he suffers from a "physical impairment" within the meaning of the ADA. He has presented absolutely no medical reports or other objective evidence substantiating his claim that his injury and subsequent surgery left him with a condition which rises to the level of a physical impairment. This court, as have others, finds this omission significant. *See Maulding v. Sullivan,* 961 F.2d 694, 698 (8th Cir.1992) (plaintiff failed to support her allegation of disability affecting respiratory system with adequate medical documentation), *cert. denied,* — U.S. —, 113 S.Ct. 1255, 122 L.Ed.2d 653 (1993); *Aucutt v. Six Flags Over Mid-America, Inc.,* 869 F.Supp. 736, 744 (E.D.Mo.1994) (plaintiff failed to present any medical reports regarding alleged medical condition or other objective affirmative evidence "that provides this court with some indication as to exactly how plaintiff is allegedly impaired"). To hold otherwise would render the requirement of a physical impairment superfluous and meaningless and would allow anyone with any kind of condition, regardless of the severity, to claim a physical impairment. Employers should not be expected to recognize a physical impairment solely on an employee's "say-so," as Farley expects Gibson to do. The logical consequences of such blind acceptance are simply too obvious to state. The court believes that Farley's condition, which has admittedly improved (the incision has healed, although "[a]ny time [he] pick[s] up something heavy, [he] feel[s] it"), is more closely akin to an injury of a transitory nature which does not come within the purview of the ADA. *See Evans v. City of Dallas,* 861 F.2d 846, 852–53 (5th Cir.1988).

Of course, "[a] physical impairment, standing alone, is not necessarily a disability as contemplated by the ADA." *Dutcher v.* *Ingalls Shipbuilding,* 53 F.3d 723, 726 (5th Cir.1995). Therefore, assuming arguendo that Farley passes the threshold requirement of establishing a physical impairment, the court nevertheless finds that he is not disabled under the ADA because he has not raised a genuine issue of material fact that he is substantially limited in any major life activity. Farley's evidence focuses primarily on the effect of his condition on the major life activity of working. As noted previously, Farley contends that he is unable to lift anything heavy. He does not indicate, however, how this self-imposed lifting restriction "prevents [him] from performing an entire class of jobs," *Dutcher,* 53 F.3d at 727, for it must be remembered that the term "working" does not, as Farley would have it, "refer to working at a particular job, or at a job of one's choice." *Aucutt,* 869 F.Supp. at 744; *see also Bolton v. Scrivner, Inc.,* 36 F.3d 939, 942 (10th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 1104, 130 L.Ed.2d 1071 (1995). Gibson's failure to grant Farley preferential treatment by curtailing his work in other capacities as production needs arose indicates, in this court's mind, not that it perceived him to be disabled but quite the opposite. *See Fink v. Kitzman,* 881 F.Supp. 1347, 1377 (N.D.Iowa 1995) (defendant's requirement that plaintiff suffering from carpal tunnel syndrome work overtime "does not indicate that [defendant] considered her disabled; if anything, it indicates that defendant did not consider that [plaintiff's] condition prevented her from performing any of the essential functions of her job"); *see also Dutcher,* 53 F.3d at 727–28. The court therefore finds that Farley has failed to raise a genuine issue of material fact on the issue of whether he suffers from a "disability," and Gibson is entitled to judgment as a matter of law on the ADA claim. Summary judgment is therefore granted on that claim as well.

## CONCLUSION

Having carefully considered the evidence, the argument of counsel, and the applicable law, the court is of the opinion that defendant's motion for summary judgment on plaintiff's race and disability discrimination

claims is well taken and is granted. An appropriate final judgment shall issue.