**Michael D. TAYLOR, Plaintiff,**

v.

**DOVER ELEVATOR SYSTEMS, INC., Defendant.**

**No. 2:95CV24–S–A.**

United States District Court,
N.D. Mississippi,
Delta Division.

Feb. 22, 1996.

Robert G. Gilder, Southaven, MS, for Plaintiff.

Edward R. Young, Todd L. Sarver, Young & Perl, P.C., Memphis, TN, for Defendant.

## MEMORANDUM OPINION AS TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SENTER, Chief Judge.

This cause is presently before the court upon defendant's motion for summary judgment. Plaintiff has charged that defendant discriminated against him in violation of the

Americans with Disabilities Act (ADA) when it terminated his employment.

## FACTS

Michael D. Taylor was employed by Dover Elevator Systems, Inc. at its Horn Lake, Mississippi facility from 1977 until he was discharged in 1994. Taylor, a diagnosed epileptic since 1973, has had approximately six seizures while on the job at Dover. Because he feels a seizure "coming on" and because he minimizes the effects by sitting it out, most have passed unnoticed and uneventfully. While the typical seizure lasts about 30 seconds with the outward manifestation of a blank stare, Taylor did have a "grand mal" seizure in 1986 at Dover resulting in a broken collar bone.

Although Taylor did not disclose his epileptic condition initially, an on-the-job injury in 1984 necessitated his informing the company nurse of his epilepsy and of the drugs he takes to control the seizures. Dover's nurse instructed Taylor to reveal his condition to his supervisors so they could be prepared if Taylor had a seizure. Thereafter, Taylor informed each supervisor. His most recent supervisor advised Taylor to sit down when he started feeling bad. Taylor's epilepsy did not affect his ability to perform his job. During his seventeen years with Dover, the only adverse employment action taken against Taylor was a written warning in 1979 regarding excessive absenteeism.

On June 22, 1994, Taylor asked his treating physician, Dr. Jesse Lawrence, to prescribe a new drug, Felbatol, in the place of the two drugs, Dilantin and Phenobarbital, he had been taking for years to control his seizures. Dr. Lawrence changed Taylor's medication and checked his progress on the new drug throughout July. On August 4, 1994, Taylor requested to be taken off Felbatol because he had learned that it caused "aplastic anemia," a bone marrow condition, which is fatal.

While at work on August 31, 1994, Taylor, in his position as a general maintenance mechanic, was paged by co-worker Rodney Bennett "to fix a busted air line." After Taylor rode his scooter to Bennett's work area, he examined the air line and concluded that it did not warrant fixing. As Taylor turned to leave, he heard a gush of air. Bennett, who was cutting the air line in two with a file, yelled at Taylor, "Now, m___ f___, fix the s___ of a b___." After using the same phraseology to Bennett, Taylor set about replacing the hose.

Bennett responded in kind by kicking Taylor's scooter and tool box while Taylor completed his task. The two adults continued verbalizing their displeasure toward one another. Taylor, who enjoyed exclusive ownership rights to the toolbox, requested that Bennett not kick it. After the fourth request, Taylor warned Bennett he was going to kick him in the rear end, but not in those words. The two men slammed into one another. Taylor then grabbed Bennett by the shirt collar telling him he was going to kill him. Bennett wrenched Taylor's watchband causing it to break. At this point they separated, Taylor hopped on his scooter, and after another brief skirmish, they returned to their respective duties.

Taylor reported the incident to a union committeeman who informed others. Both Taylor and Bennett were sent home on suspension and eventually discharged. During the period between the altercation and the filing of this suit, five meetings were held in an effort to resolve the situation. These included three company meetings, a grievance meeting with the union, and, finally, an arbitration hearing.

The first meeting, an investigatory meeting, resulted in deferment of action until the plant manager could review the findings. In addition to relaying his side of the story, Taylor told of a prior incident with Bennett which would, along with later revelations, confirm assertions by both that they had a history of problems. The broom incident involved a repair on the roof, some dirt on the floor, and, of course, an exchange of words. This confrontation resulted in Taylor being struck by a broom hurled through the air. When asked at the first meeting of his threat to kill Bennett, Taylor responded that most people who make threats like that do not follow through with them.

At the second meeting, the plant manager, Jerry Hall, informed Taylor and Bennett they had violated company rule three which prohibits "fighting, brawling, or attempting injury to another person while on company premises." The rule additionally provides that a violation thereof could result in discharge. (Hall reviewed the personnel records and determined fights had occurred on three previous occasions resulting in voluntary resignation or termination of the violators.) Again, a decision was tabled until further investigation into the "history" between the men. During this second meeting, Taylor told the union president about his epilepsy and the Felbatol.

Further "history" included two incidents occurring in the clock out line. The first involved Bennett jumping out of line, grabbing his crotch, and uttering a vulgar statement after yelling, "Hey, Mike Taylor." A few days later, Bennett, again specifying Taylor by name, blurted out a derogatory remark about Taylor's wife for all to hear.

Alas, the history failed to provide any relief for the two whose fate was sealed by company rule three. At the third meeting Hall offered the two antagonists the choice of resigning or being discharged. For once, the two were in harmony and refused resignation. It was during this meeting that Taylor told Dover of his taking Felbatol.

Following his discharge on September 6, 1996, Taylor sought the assistance of his physician on September 15, 1994 to back up his claim concerning the side effects. Because Dr. Lawrence was out of town, Taylor visited Dr. Lora McGill, a physician in the same office, who saw Taylor as a patient for the first time. Dr. McGill wrote a letter dated September 22, 1994 on behalf of Taylor listing the possible side effects of Felbatol, and stated that Taylor suffered insomnia as a result of Felbatol. The possible side effects listed by Dr. McGill and contained in the informational insert brochure by the manufacturer include insomnia, somnolence, anxiety, headaches, and fatigue. Dr. McGill wrote that additional side effects include dizziness, nervousness, depression, ataxia, anorexia, vomiting, weight decrease, tremor and visual abnormality. She did not indicate that Taylor suffered these additional side effects. (Dr. Lawrence, the treating physician, claims he never heard Taylor complain of side effects while on the Felbatol and that if he had, notations would have been entered on the chart. Additionally, he refutes any link between the medication and aggressive behavior.) Taylor presented the letter from Dr. McGill at the grievance meeting held between Dover and the union, but to no avail. Dover maintained that the discharge was appropriate.

At the arbitration hearing, Taylor said that as a result of the Felbatol he suffered increased agitation, upper respiratory tract infections, insomnia, nervousness, anxiety, depression, constipation, sinusitis, weight loss, fatigue, and difficulty getting along with others. Taylor also stated that even though Dr. Lawrence had no notations on the chart, Taylor did complain that he was nervous, anxious, depressed, somnolent, had headaches, and was irritable. Taylor went on to state these side effects were very temporary and had no long term disabling effect.

It is at this juncture and after an unsatisfactory finding from the arbitration hearing that Taylor brings his cause before this court. Dover moves for summary judgment based upon several alternative grounds.

## DISCUSSION

### I.

Summary judgment will be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue is "genuine" when the non-moving party comes forward with evidence sufficient to enable the trier of fact to find in his favor on the issue. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. "This showing requires more than 'some metaphysical doubt as to the material facts.'" *Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir.1994) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio,*

475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). In some circumstances the factual context may render the nonmoving party's claim implausible, and the nonmoving party must come forward with "more persuasive evidence" to support the claim "than would otherwise be necessary." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. If the non-moving party fails to make a sufficient showing of an essential element of a claim with respect to which it has the burden of proof, then the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In this analysis, the court must view the facts and inferences from the evidence in the light most favorable to the nonmoving party. *Crescent Towing v. M/V Anax*, 40 F.3d 741, 743 (5th Cir.1994).

## II.

■ The Americans with Disabilities Act prohibits an employer from discriminating against an employee with a disability because of the disability. 42 U.S.C. § 12112(a). To establish a prima facie case under the ADA, Taylor must prove that (1) he suffers from a disability; (2) he is a qualified individual; and, (3) he suffered an adverse employment action because of his disability. *Chandler v. City of Dallas*, 2 F.3d 1385, 1390 (5th Cir.1993), *cert. denied*, ⸺ U.S. ⸺, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994);[1] *Rakestraw v. Carpenter Company*, 898 F.Supp. 386, 389 (N.D.Miss.1995); *Stradley v. Lafourche Communications, Inc.*, 869 F.Supp. 442, 443 (E.D.La.1994). To survive a summary judgment motion against him, Taylor need only show there is a genuine issue of material fact on each of these elements. *Chiari v. City of League City*, 920 F.2d 311, 314–15 (5th Cir.1991).

■ Where issues of illegal motivation exist under ADA claims, courts apply Title VII's shifting of evidentiary burdens. *Benson v. Northwest Airlines*, 62 F.3d 1108 (8th

Cir.1995); *Ennis v. NABER*, 53 F.3d 55 (4th Cir.1995). *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973). After the plaintiff creates a presumption of discrimination by establishing his prima facie case, the defendant can rebut the presumption by articulating a legitimate, nondiscriminatory reason for the discharge. *Texas Dep't. of Community Affairs v. Burdine*, 450 U.S. 248, 253–54, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981). The plaintiff may then overcome the presumption by presenting evidence that the proffered reason was pretextual. *Id.* However, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993).

Here, in establishing his prima facie case of discrimination, Taylor attempts to assert two disabilities—both the epilepsy and the side effects of the drug Felbatol prescribed to control the seizures. The term "disability" under the ADA is defined as: (a) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment. 42 U.S.C. § 12102(2).

■ The side effects of Felbatol fail to qualify as a disability. First, the record is devoid of any summary judgment evidence, i.e. medical diagnosis, that Taylor was "more volatile or less passive than was his usual condition" due to an emotional impairment caused by Felbatol. Certainly there is record of Taylor having been prescribed the medication on June 22, 1994; there is record that on August 4, 1994, Dr. Lawrence took Taylor off the Felbatol at the patient's request; and there is record that the altercation leading to his discharge occurred on August 31, 1994. Recitations of possible side

---

1. *Chandler* was decided under the Rehabilitation Act of 1973. However, it was Congress' intent that the caselaw developed under the Rehabilitation Act be generally applicable to the term disability under the ADA. *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 727 n. 14 (5th Cir.1995) (quoting 29 C.F.R. § 1630, App., § 1630.2(g)). This decision is based upon caselaw from both the Rehabilitation Act and the ADA.

effects from a non-treating physician and an informational insert provided by the drug manufacturer do not in any way establish that Taylor did indeed suffer an emotional impairment causing him to be more volatile causing, in turn, the fight with Bennett. *See Farley v. Gibson Container*, 891 F.Supp. 322, 326 (N.D.Miss.1995) (denying disability claim where employee presented no medical reports or objective evidence substantiating his claim of physical impairment). What is also absent is evidence that even if Taylor had been diagnosed as emotionally impaired, that he continued to experience the side effects of Felbatol on August 31 after being taken off the drug on August 4. While a federal court is not to weigh the evidence, it is well settled law under the Federal Rules of Civil Procedure that Taylor must carry his burden with more than mere allegations and conclusions. *Celotex*, 477 U.S. at 321–22, 106 S.Ct. at 2552–53; *Floors Unlimited, Inc. v. Fieldcrest Cannon, Inc.*, 55 F.3d 181, 184 (5th Cir.1995).

 Furthermore, if evidence had been presented establishing an emotional impairment, the side effects, in this case, nevertheless fail to qualify as a disability because there is no substantial limitation of a major life activity. Taylor states that the side effects adversely affected him "on a very temporary basis but which had no long range disabling effect." Because an impairment, standing alone, is not necessarily a disability as contemplated by the ADA, impairment requires substantial limitation on one or more of the major life activities. *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 (5th Cir.1995). It is for this reason that temporary injuries with no permanent effects are ordinarily not considered disabilities under the ADA. *Evans v. City of Dallas*, 861 F.2d 846, 852–53 (5th Cir.1988); *Rakestraw v. Carpenter Co.*, 898 F.Supp. 386, 390 (N.D.Miss.1995); *Oswalt v. Sara Lee Corp.*, 889 F.Supp. 253, 257 (N.D.Miss.1995), *aff'd.* 74 F.3d 91 (5th Cir.1996). Therefore, plaintiff fails to meet the first element of his

prima facie case under the ADA for the side effects from the medication Felbatol.

 However, Taylor's diagnosed condition of epilepsy will be considered a disability for purposes of this summary judgment motion despite Taylor's assertion to the contrary. Taylor maintains in his complaint that "defendant perceived plaintiff's epileptic condition to be a disability when, in fact, it was not a disability."[2] If Taylor attempts to qualify as disabled because he was regarded as such by his employer, his attempt fails. For purposes of the ADA, "regarded as" simply means that the employer regards the employee as having a substantial limitation on his ability to work in general. *Chandler v. City of Dallas*, 2 F.3d 1385, 1391–93. Because of the complete absence of factual basis by Taylor showing that Dover regarded him as having an impairment and, indeed, overwhelming evidence to the contrary, the court will assume that Taylor means to establish his epileptic condition as a disability.

Federal regulations support the conclusion that epilepsy should normally be considered an impairment under the ADA:

> The existence of an impairment is to be determined without regard to mitigating measures such as medicines, or assistive or prosthetic devices. For example an individual with epilepsy would be considered to have an impairment even if the symptoms of the disorder were completely controlled by medicine. Similarly, an individual with hearing loss would be considered to have an impairment even if the condition were correctable through the use of a hearing aid.

29 C.F.R. Part 1630 App., Interpretative Guidance to § 1630.2(h) (1994). See also 29 C.F.R. § 1615.103 (epilepsy is a "physical impairment" under the Rehabilitation Act). Additionally, other courts have found epilepsy to qualify as a disability. *Reynolds v. Brock*, 815 F.2d 571, 573 (9th Cir.1987) (finding epilepsy to be a handicap under the

---

**2.** Apparently, Taylor confuses the term "disability" under the ADA with the requirement that individuals be "qualified." Under the ADA, individuals must be qualified to perform the essential functions of their jobs with or without reasonable accommodation. Millions of disabled Americans report to work each day *without* need of accommodation in spite of their disability. Indeed, this *is the very heart and lifeblood of the Americans with Disabilities Act*—to give disabled individuals the opportunity to work in spite of their disability and not because of their disability.

Rehabilitation Act); *Vazquez v. Bedsole,* 888 F.Supp. 727, 731 (E.D.No.Car.1995); *Susie v. Apple Tree Preschool & Child Care Center,* 866 F.Supp. 390, 395 (N.D.Iowa 1994). Thus, and because defendants do not argue that Taylor's epilepsy is a disability, it will be considered as such for this summary judgment motion.

Taylor successfully meets the second element of his prima facie case as well. A qualified individual under the Act is one who with or without reasonable accommodation can perform the essential functions of their job. No dispute exists as to whether Taylor could perform his job. In fact, Dover's sole complaint before the altercation involved Taylor's excessive absenteeism in 1979.

█ It is the third element of the claim—that he suffered adverse employment action because of his disability—where Taylor's prima facie case collapses. Both sides agree that during Taylor's seventeen years with Dover he only received one warning and that Dover became aware of Taylor's epilepsy in 1984. Dover admits that Taylor's condition did not affect his job performance. Taylor admits the epilepsy had minimal interference with his job with the exception of the "grand mal" seizure he suffered in 1986. Both sides agree that Taylor was terminated because of the altercation. Disagreement arises at this point. Taylor relies on a causally connected manifestation of his disability for the argument that he was terminated because of the disability.

Cause and effect theory under the ADA is condensed into a conduct/disability issue. Where an employee was discharged for excessive absenteeism alleged to have been caused by his alcoholism, the Second Circuit held that one's disability should not be distinguished from its consequences in determining whether he was fired "solely by reason" of his disability. *Teahan v. Metro–North Commuter R.R.,* 951 F.2d 511, 516–17 (2d Cir.1991), *cert. denied,* 506 U.S. 815, 113 S.Ct. 54, 121 L.Ed.2d 24 (1992). The First Circuit, however, rejected a plaintiff's causal argument of heroin addiction where the plaintiff was fired after he was arrested for possession of heroin for distribution. *Taub v. Frank,* 957 F.2d 8 (1st Cir.1992). In af-

firming summary judgment for the F.B.I. where an agent was discharged for intoxication on duty, the Fourth Circuit said, ". . . based on no less authority than common sense, it is clear that an employer subject to the . . . [Rehabilitation] Act must be permitted to terminate its employees on account of egregious conduct, irrespective of whether the employee is handicapped." *Little v. F.B.I.,* 1 F.3d 255 (4th Cir.1993). Other circuits follow this reasoning. *See Maddox v. University of Tennessee,* 62 F.3d 843, 848 (6th Cir.1995) (holding that the University did not discharge coach because of disability where coach maintained that discharge based on D.U.I. was causally connected to his disability of alcoholism); *Collings v. Longview Fibre Co.,* 63 F.3d 828, 832–33 (9th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 711, 133 L.Ed.2d 666 (1996) (holding no violation of ADA where drug-addicted employees were discharged for buying, selling, and using marijuana at the work place).

At first blush, it may appear that the Second Circuit is out of synchronization with the others. However, distinction lies in the categorization of the conduct—that of being either general or specific conduct. In the cases affirming summary judgment for the defendants, the conduct is specific, or more precisely, misconduct. "Employers subject to the Rehabilitation Act and ADA must be permitted to take appropriate action with respect to an employee on account of egregious or criminal conduct, regardless of whether the employee is disabled." *Maddox,* 62 F.3d at 848. Taylor was fired for specific conduct, not any condition to which it might be related. Had Dover fired Taylor because they did not like his emotional state in general (i.e. Taylor was moody, volatile, unpleasant), the court could possibly provide Taylor enough benefit of the doubt to establish his prima facie case. Even in doing so, however, Taylor faces defeat before completing the analysis.

█ Once a plaintiff establishes a prima facie case creating a presumption of discrimination under the ADA, the defendant can rebut the presumption by articulating a legitimate, nondiscriminatory reason for the discharge. This burden is not one of persua-

sion, but only one of producing evidence from which lawful motivation could be inferred. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. at 253–54, 101 S.Ct. at 1093–95. Dover maintains the legitimate nondiscriminatory reason is misconduct or, specifically, the violation of a company rule. Rule three prohibits fighting on company premises and includes as a possible consequence for violation of the rule, an employee's immediate discharge.

Taylor now has the burden of proving that the firing was pretextual. This can be accomplished in many ways. Taylor might offer evidence that Dover Elevator failed to rely on the reason in past decision making, *Corley v. Jackson Police Dept.*, 566 F.2d 994 (5th Cir.1978), that Dover failed to articulate the reason at the time of discharge and advanced conflicting reasons as the litigation progressed, *Lindahl v. Air France*, 930 F.2d 1434 (9th Cir.1991) or, perhaps more significantly, that a similarly situated employee without a disability did not suffer the adverse employment action as well. Taylor does not advance any of these arguments simply because he cannot. Dover invoked a rule which had been in place prior to the altercation and, in fact, had used it three times previously. Dover consistently maintained through all the many meetings that the altercation was the cause for termination. Finally, a co-worker, Bennett, was fired as well. Unless a plaintiff can show that the nondiscriminatory reason offered by the employer was a pretext for disability discrimination, there is no triable issue under the ADA.

■ Taylor's sole argument for pretext is cause and effect. Taylor advances the following argument: He was fired for violating a company rule. He violated a company rule because he was more volatile than usual. He was more volatile than usual because he was taking Felbatol. He was taking Felbatol to control his epilepsy. The result is four times removed from the disability. Assuming the law favors his position, which it does not, Taylor offers nothing more than conclusory remarks to establish this causal chain. Mere conclusory rebuttals by the nonmoving party will not defeat a motion for summary judgment. *Topalian v. Ehrman*, 954 F.2d 1125,

1131 (5th Cir.1992), *reh'g. denied*, 961 F.2d 215 (5th Cir.), *cert. denied*, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). The chain becomes weak at the volatile link, and weakened further at the altercation link. To say that the altercation resulted from Taylor's volatile condition is as speculative as saying that the altercation resulted from a man's tiring of being taunted by the company bully. Taylor fails to raise a genuine question of fact about whether the firing was pretextual.

ADA is designed to give the blind person an opportunity to run a switchboard if, in fact, this individual can qualifiedly do so. Or, it might give the paraplegic the chance to use the full potential of her brain. In the case of an epileptic, it may allow him a break from his work so he can sit down at the advent of a seizure. This would take the form of reasonable accommodation, just as Dover afforded Taylor.

■ ADA is not designed to give disabled persons preferential treatment. If the blind person cannot with reasonable accommodation operate the switchboard, or if the paraplegic is not quite smart enough for the job, ADA does not mandate the hiring of these individuals. Likewise, employers are not required to ignore a disabled employee's disregard of company rules. Or, as Judge Reavley succinctly stated, "[W]e do not read the ADA as requiring affirmative action in favor of individuals with disabilities, in the sense of requiring that disabled persons be given priority in hiring or reassignment over those who are not disabled. It prohibits employment discrimination against qualified individuals with disabilities, no more and no less." *Daugherty v. City of El Paso*, 56 F.3d 695, 700 (5th Cir.1995).

■ While the plaintiff correctly states that he need only raise genuine issues of material fact, the court finds that he has failed to do so. One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex*, 477 U.S. at 323–24, 106 S.Ct. at 2553. In the present instance, even if the court affords the greatest

benefit of the doubt as to Taylor's prima facie case, the failure of his ADA claim is inevitable. Taylor cannot successfully assert a claim under the ADA. The court therefore finds that Dover is entitled to summary judgment as a matter of law.

## CONCLUSION

Having carefully considered the evidence and the applicable law, the court is of the opinion that defendant's motion for summary judgment on plaintiff's disability discrimination claim is well taken and is granted. A final judgment in accordance with this opinion shall be issued. This the 22nd day of February, 1996.