**Carla BOREN, Plaintiff,**

**v.**

**WOLVERINE TUBE, INC., Defendant.**

**Civil No. 1:96CV102–D–A.**

United States District Court,
N.D. Mississippi,
Eastern Division.

May 28, 1997.

---

Gregory Harbison, Tupelo, MS, for plaintiff.

John Eaton, III, Tupelo, MS, for defendant.

### MEMORANDUM OPINION

DAVIDSON, District Judge.

This cause comes before the court upon the motion of the defendant Wolverine Tube, Inc. ("Wolverine") for summary judgment in its favor as against all of the plaintiff's claims. The plaintiff Carla Boren has filed suit against Wolverine alleging that she was terminated in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and that Wolverine is also liable under the state law theories of intentional infliction of emotional distress and wrongful discharge. The issues have been briefed by both parties and the matter is now ripe for resolution by this court.

1. In a motion for summary judgment, the facts must be construed in the light most favorable to the non-moving party. *Matagorda County v. Russell Law,* 19 F.3d 215, 217 (5th Cir.1994). The court's recitation of the facts in this case reflects this rule.

### FACTUAL BACKGROUND [1]

Wolverine's manufacturing plant in Booneville, Mississippi began hiring for a number of open positions in October 1995. Def.'s Exh. A, Johnson Aff., Mar. 7, 1997 ("Johnson Aff."), at ¶ 6. Boren applied for a position on the banding machine and Wolverine hired her on November 6, 1995, as a trainee for a Grade III banding operator position. Def.'s Exh. D, Boren Dep., Sept. 9, 1996 ("Boren Dep."), at 62. The plaintiff was an at-will employee. Further, all new Wolverine employees remained on probationary status for the first ninety (90) days of employment and could not be absent for more than forty-six (46) hours of work during that time or their employment would be terminated. Boren Dep. at 50; Exh. 2, att. Boren Dep., at 4; Johnson Aff. at ¶ 8.

On or around November 16, 1995, Boren began to experience physical problems including a rash on her exposed skin surfaces (face and neck), eye irritation and breathing difficulty which escalated to vomiting and nose bleeds. Plaintiff's Exh. A, Boren Dep. at 81, 86–88. She reported her condition to her supervisor, Jessie Sparks, and the plant manager, Mark Clark. *Id.* at 91. Clark instructed Sparks to take Boren to the hospital, and Sparks did so. *Id.* The emergency room physician administered a steroidal shot, which relieved some of Boren's symptoms, placed her on medication, and allowed her to return to work that same day with no restrictions. The following day, November 17, the plaintiff visited the company physician, Dr. Dwight Johnson, pursuant to Wolverine policy. Johnson Aff. at ¶ 9; Boren Dep. at 103–04. After examining Boren, Dr. Johnson diagnosed her with an allergic rash and returned her to work on light duty.[2] Def.'s Exh. F, Johnson Aff., Mar. 12, 1997 ("Dr. Johnson Aff."), at ¶ 5.

On that same day, November 17, Boren completed her two-week training period and Wolverine granted her request for placement in a bander position on the third shift. Bor-

2. Dr. Johnson testified that he placed her on light duty because she could not operate heavy equipment while taking medication. Dr. Johnson Aff. at ¶ 5.

en Dep. at 72–73. Soon after, Boren again complained of similar physical symptoms and requested time off from work, which Wolverine granted. Boren Dep. at 110–11. Boren saw Dr. Johnson again on November 30, 1996, when he noted some redness on her face and neck. Boren Dep. at 146; Dr. Johnson Aff. at ¶ 6. He prescribed and administered a steroidal injection and recommended that Boren "may need to move to another area" at work. Boren Dep. at 146–46; Exh. 7 att. Boren Dep.; Dr. Johnson Aff. at ¶ 6; Def.'s Exh. G, Heger Dep., Jan. 21, 1997 ("Heger Dep."), at 8. Upon her return from Dr. Johnson's office, Boren requested that Wolverine transfer her to another area. Her leadman, Michael Heger, acquiesced and moved her to a furnace position. Boren Dep. at 105, 107; Heger Dep. at 8.

Boren remained at the furnace position for approximately two weeks until Jessie Sparks moved her back to her banding position. Heger Dep. at 8–9; Boren Dep. at 138–39, 146. Upon her return to this position, Boren again began experiencing similar symptoms which caused her to either leave work early or miss entire shifts of work. Boren Dep. at 179, 181–82; Johnson Aff. at ¶¶ 13–17. She requested that Wolverine allow her to return to her job shift on the furnace, transfer her to an open forklift operator position, allow her to swap positions with a more senior employee, Bronson Tabler, or provide her with a breathing mask. Boren Dep. at 138–40, 187, 81; Sparks Dep. at 16; Heger Dep. at 9–10. Wolverine denied each request. Boren Dep. at 187, 141; Sparks Dep. at 16–17; Plaintiff's Exh. E, Tabler Dep., Feb. 13, 1997 ("Tabler Dep."), at 56. On December 19, 1995, Wolverine terminated Boren's employment, allegedly because of her excessive absenteeism. Boren Dep. at 185; Def.'s Exh. B, Clark Dep., Jan. 21, 1997 ("Clark Dep."), at 5; Def.'s Exh. C, Moses Dep., Jan. 21, 1997 ("Moses Dep."), at 6, 14.

Boren does not dispute that she missed more than forty-eight (48) hours of work in her first forty-two (42) days of employment in violation of Wolverine's probationary employee policy. Boren Dep. at 169–70; Johnson Aff. at ¶ 8. However, she submits that she suffers from a disability due to an allergy to D–Limonene, a chemical used on the banding machine. This alleged disability caused her absences from work. Boren Dep. at 76–77; Clark Dep. at 7. As her absences are linked only to her allergic reactions and she was fired due to her absences, Boren alleges she was fired because of a disability in violation of the ADA.

## LEGAL DISCUSSION

### I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.C.P. 56(c). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Vera v. Tue*, 73 F.3d 604, 607 (5th Cir.1996). Once a properly supported motion for summary judgment is presented, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Brothers v. Klevenhagen*, 28 F.3d 452, 455 (5th Cir.1994). "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Federal Sav. & Loan Ins. v. Kralj*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the party opposing the motion. *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir.1995); *Matagorda County v. Russell Law*, 19 F.3d 215, 217 (5th Cir.1994).

### II. THE ADA CLAIM

#### A. THE PRIMA FACIE CASE

The ADA prohibits employers from "discriminat[ing] against a qualified individu-

al with a disability because of the disability." 42 U.S.C. § 12112(a). The defendant submits that summary judgment is appropriate as against the plaintiff's ADA claim because she cannot establish her *prima facie* case under that statute. To establish an ADA *prima facie* case, the plaintiff must demonstrate that she (1) suffers from a "disability"; (2) is a "qualified individual" for the job; and (3) suffered an adverse employment action because of her disability. *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1092 (5th Cir.1996); *Rosamond v. Pennaco Hosiery, Inc.*, 942 F.Supp. 279, 283 (N.D.Miss.1996). For the plaintiff's claim to survive against a properly supported motion for summary judgment, however, the plaintiff need only demonstrate that genuine issues of material fact exist as to each element. *Waltman v. International Paper Co.*, 875 F.2d 468, 477 (5th Cir.1989) (citing *Thornbrough v. Columbus & Greenville R.R.*, 760 F.2d 633, 640–41 (5th Cir.1985)).

■ The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual."[3] 42 U.S.C. § 12102(2)(A). Major life activities include

caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and *working*.

29 C.F.R. § 1630.2(I) (emphasis added). The plaintiff alleges that her allergy substantially affects the major life activity of working. With regard to working,

[t]he term *substantially limits* means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

*Id.* § 1630.2(j)(3)(I). To determine the existence of a disability, the court must initially inquire whether the plaintiff suffers from an impairment. *Robinson v. Global Marine Drilling*, 101 F.3d 35, 36 (5th Cir.1996), *cert. denied,* —— U.S. ——, —— S.Ct. ——, —— L.Ed.2d ——; *Howard v. North Miss. Medical Ctr.*, 939 F.Supp. 505, 508 (N.D.Miss. 1996); 29 C.F.R. § 1630.2(h), (j), App. If an impairment exists, or a genuine issue of material fact remains as to that issue, the court must then address whether the alleged impairment substantially limits one or more of the plaintiff's major life activities. *Howard,* 939 F.Supp. at 508.

1. Physical Impairment

A physical impairment is defined as

[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs, cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine....)

29 C.F.R. § 1630.2(h)(1). The defendant submits that the plaintiff does not suffer from any impairment, much less that such impairment rises to the level of a disability under the ADA. According to the plaintiff, she is allergic to D–Limonene. While employed on the banding machine, Boren testified that she suffered a rash, vomiting, difficulty in breathing, nosebleeds, watery eyes and nausea. Boren Dep. at 81–88. During her employment, the plaintiff saw the company doctor, Johnson, twice. Dr. Johnson Aff., p. 2–3. At her first visit, Dr. Johnson did not detect any rash. While the physician noticed redness on the plaintiff's face and neck upon her second visit, he testified that the rash was "slight" and "unremarkable." *Id.,* p. 2. The cause of the plaintiff's symptoms was never diagnosed while she worked for the defendant.[4] After she left Wolverine's em-

---

**3.** The statute also includes in its definition of disability a "record of such an impairment" or "being regarded as having such an impairment." 42 U.S.C. § 12102(2)(B), (C). The plaintiff does not contend that either of these two definitions fits the facts of her case. As such, the court declines to address them further.

**4.** Almost a year subsequent to her employment termination, Boren met with Dr. Philip Loria, Jr. Loria Dep. at 11. Dr. Loria saw the plaintiff first on November 5, 1996 for approximately fifteen minutes, and saw her again on November 11, 1996 for five minutes. *Id.* Based on these two brief meetings, the plaintiff's history and his review of Alexander Fisher's contact dermatitis

ployment, Boren never suffered the symptoms again. Boren Dep. at 155.

While she was employed with the defendant, Boren presented her employer with no medical reports or other objective evidence substantiating her claim that her alleged allergy rises to the level of a physical impairment. This court, as have other courts, finds such an omission significant. *See Farley v. Gibson Container, Inc.*, 891 F.Supp. 322, 326 (N.D.Miss.1995); *Maulding v. Sullivan*, 961 F.2d 694, 698 (8th Cir.1992) (plaintiff failed to establish impairment with adequate medical documentation), *cert. denied*, 507 U.S. 910, 113 S.Ct. 1255, 122 L.Ed.2d 653 (1993); *Aucutt v. Six Flags Over Mid–America, Inc.*, 869 F.Supp. 736, 744 (E.D.Mo.1994) (plaintiff failed to provide affirmative medical evidence indicating exactly how he was impaired); *Kalekiristos*, 958 F.Supp. 641, 657 (same); *Buchanan v. Safeway Stores, Inc.*, 1996 WL 723089, *3 n. 3 (N.D.Cal.1996) ("It is difficult for the court to conclude that the plaintiff's injuries constitute an impairment under the ADA in the absence of any medical reports detailing the plaintiff's ... injuries or including a diagnosis/ prognosis.") (citing *Farley*, 891 F.Supp. at 326).

■ The court is of the opinion that the plaintiff has failed to provide adequate medical documentation supporting her claim that she suffers from a physical impairment cognizable under the ADA.[5]

To hold otherwise would render the requirement of a physical impairment super-

fluous and meaningless and would allow anyone with any kind of condition, regardless of the severity, to claim a physical impairment. Employers should not be expected to recognize a physical impairment solely on an employee's "say-so".... The logical consequences of such blind acceptance are simply too obvious to state.

*Farley*, 891 F.Supp. at 326. However, assuming arguendo that the plaintiff's alleged allergic reaction suffices as a physical impairment under the ADA, her claim still fails as a matter of law as discussed *infra*.

2. Substantial Limitation of a Major Life Activity .

■ The plaintiff submits that her impairment substantially limits the major life activity of working. Again, according to the plaintiff, her allergy to D–Limonene prevents her from working as a banding operator. However, she failed to indicate how this fact significantly restricts her "ability to perform either a class of jobs or a broad range of jobs in various classes." 29 C.F.R. § 1630.2(j)(3)(I); *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 (5th Cir.1995). As noted *supra*, "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(I); *Farley*, 891 F.Supp. at 326 (noting term "working" does not "refer to working at a particular job, or at a job of one's choice.").

---

book, Dr. Loria concluded that Boren had allergic contact dermatitis with relation to D–Limonene. *Id.* at 8, 11, 13, 22. However, he likened her allergic reaction to that suffered by the majority of the population when brought into contact with poison ivy. *Id.* at 16. The plaintiff's expert also explained that several of Boren's most severe symptoms—the vomiting, throat closing and water eyes—were not symptoms common to contact dermatitis. *Id.* at 33. The typical symptoms of the plaintiff's diagnosis include itching, redness and some swelling and blistering of the skin. *Id.* Finally, after noting that her symptoms cleared quickly with treatment, Dr. Loria opined that Boren had probably a moderate sensitivity to the suspected chemical which could be controlled with topical treatment. *Id.* at 39–40. However, "[a] person alleging a disability protected by the ADA has a burden of establishing with medical evidence the existence of the alleged disability, and presenting the documentation *during the term of employment*, not

following termination." *Kalekiristos v. CTS Hotel Mgt. Corp.*, 958 F.Supp. 641, 657 (D.D.C. 1997) (quoting *Farley*, 891 F.Supp. at 326) (emphasis added).

Furthermore, although Dr. Loria himself did not perform a patch test on the plaintiff to confirm his diagnosis, he testified that he would rely upon the results of such a test. *Id.* at 23. On February 4, 1997, Boren participated in an Independent Physical Examination where Dr. Robert Kaplan tested her for allergies. Def.'s Exh. 1, Kaplan Report. After conducting a "patch test" of D–Limonene, the physician concluded that Boren is *not* allergic to that material. Kaplan Report at 1.

**5.** Even were the court not to require such supporting evidence, the plaintiff still failed to present sufficient evidence demonstrating she suffers from an ADA-cognizable impairment.

Even her own expert, Dr. Loria, basing his opinion on his diagnosis that Boren is allergic to D–Limonene, indicated that she could probably work elsewhere in the plant at Wolverine and "not have a problem." Loria Dep. at 39.

Dr. Loria further testified that the plaintiff "would have a significant chance of eventually becoming allergic to citrus peel" if she went into food preparation and that she "would likely have problems with the oil base" if she chose to become a painter. Loria Dep. at 36. However, Dr. Loria testified that "unless she were a professional painter I would not anticipate this (allergy) to have a significant limitation for her." *Id.* at 19. In fact, the plaintiff's expert further testified that her allergic contact dermatitis would not substantially limit her life functions. *Id.* Significantly, he found her allergic sensitivity to be moderate and thus treatable with topical ointments. *Id.* at 40–41. In any event, the court is of the opinion that exclusion from such activities as painting or food preparation would not constitute exclusion from a "class of jobs or a broad range of jobs in various classes."

■ The Fifth Circuit has noted that a class of jobs includes "jobs utilizing similar training, knowledge, skills or abilities, within that geographical area. . . ." *Bridges v. City of Bossier,* 92 F.3d 329, 334 (5th Cir.1996) (citing 29 C.F.R. § 1630.2(j)(3)(ii)(B)). In *Bridges,* the court held that the plaintiff's limitation which prevented him from becoming a firefighter, municipal paramedic or an EMT backup firefighter only affected a narrow range of jobs. *Bridges,* 92 F.3d at 334–35. This court is also of the opinion that the plaintiff's impairment, assuming that one exists, only affects a narrow range of jobs and that she is thus not substantially limited in the major life activity of working. The plaintiff's ADA claim fails as a matter of law.

### III. INTENTIONAL INFLICTION OF MENTAL DISTRESS

■ The defendant has also moved for summary judgment as against the plaintiff's claim for mental distress. The plaintiff declined to brief this issue in her response brief. The court is of the opinion that no genuine issues of material fact exist which preclude a ruling upon this claim. Mississippi law allows recovery for intentional infliction of emotion distress "[w]here there is something about the defendant's conduct which evokes outrage or revulsion, done intentionally . . . the results being reasonably foreseeable . . . even though there has been no physical injury." *Sears, Roebuck & Co. v. Devers,* 405 So.2d 898, 902 (Miss.1981). Generally, employment disputes including termination do not enter this realm. *Prunty v. Arkansas Freightways, Inc.,* 16 F.3d 649, 654–55 (5th Cir.1994); *Dandridge v. Chromcraft Corp.,* 914 F.Supp. 1396, 1405 (N.D.Miss.1996); *Glasgow v. Sherwin– Williams Co.,* 901 F.Supp. 1185, 1192 (N.D.Miss.1995). Termination of the plaintiff's employment in the case at bar is not the type of conduct which is "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *White v. Walker,* 950 F.2d 972, 978 (5th Cir.1991). There is no genuine issue of material fact as to this finding and the defendant is entitled to a judgment as a matter of law on this claim.

### IV. WRONGFUL DISCHARGE

■ The defendant has also moved for summary judgment against the plaintiff's remaining claim of wrongful discharge. The plaintiff likewise declined to respond to the defendant's argument with regard to this issue. Wolverine hired Boren as an at-will employee. *See* Exh. 2, p. 4, att. Boren Dep. "This means that either the employer or the employee may have a good reason, a wrong reason, or no reason for terminating the employment contract." *Solomon v. Walgreen Co.,* 975 F.2d 1086, 1089 (5th Cir.1992). Only two very narrow public policy exceptions to this general rule exist in Mississippi. An at-will employee may bring a wrongful discharge claim against her employer when the employment relationship is terminated because the employee refused to commit an illegal act for the employer or because the employee reported an illegal act of the employer. *Willard v. Paracelsus Health Care*

*Corp.,* 681 So.2d 539, 542 (Miss.1996); *McArn v. Allied Bruce–Terminix,* 626 So.2d 603, 606 (Miss.1993). Neither of these two exceptions apply to the facts of this case. Thus, as no genuine issue of material fact exists which would otherwise preclude a ruling upon this issue, the plaintiff's wrongful discharge claim shall be dismissed.

### CONCLUSION

After thoroughly reviewing the record and the parties' respective briefs, the court is of the opinion that the defendant's motion for summary judgment should be granted. No genuine issue of material fact exists with regard to the absence of a physical impairment of the plaintiff which substantially limits a major life activity. Thus, Wolverine is entitled to a judgment as a matter of law as to the plaintiff's ADA claim. Similarly, no genuine issues of material fact preclude a ruling upon the plaintiff's state law claims of intentional infliction of emotional distress and wrongful discharge. The defendant is entitled to a judgment as a matter of law with respect to these claims as well.

A separate order in accordance with this memorandum opinion shall issue this day.

### ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

Pursuant to a memorandum opinion issued this day, the court upon due consideration of the defendant's motion for summary judgment, finds said motion well taken and shall grant it.

Therefore, it is ORDERED that:

1) Wolverine Tube, Inc.'s Motion for Summary Judgment against the plaintiff's claims is hereby GRANTED.

2) the plaintiff's claims are hereby DISMISSED.

3) this case is CLOSED.

All memoranda, depositions, affidavits and other matters considered by the court in granting the defendant's motion for summary judgment are hereby incorporated and made a part of the record in this cause.