Alexander DOUGLAS, Plaintiff,

v.

VICTOR CAPITAL GROUP,
et al., Defendants.

No. 96 CIV. 6557 (SHS) (AJP).

United States District Court,
S.D. New York.

Oct. 13, 1998.

George R. Osborne, NY, for Plaintiff.

William Simon, Hertzog, Calamari & Gleason, NY, for Defendants.

## ORDER

STEIN, District Judge.

The Court has made a *de novo* review of the Report and Recommendation dated September 17, 1998, by Magistrate Judge Andrew J. Peck, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and has considered plaintiff's objections dated September 29, 1998, and defendants' objections dated September 30, 1998.

The Court is not taking into consideration either the affidavit of Leon Sultan dated September 28, 1998, or the affidavit of C. Ronald Mackenzie dated September 29, 1998. Permitting their consideration flies in the face of the facts that (1) plaintiff is not acting *pro se*, (2) plaintiff never submitted a Rule 56.1 counterstatement, (3) plaintiff had several months during the briefing of defendants' summary judgment motion to submit admissible medical evidence, (4) Magistrate Judge Peck gave plaintiff clear and explicit notice in his August 21, 1998 Order that plaintiff had not made out a *prima facie* case and had until September 3, 1998 in which to submit that information or "defendants' summary judgment motion will be granted," (5) the magistrate judge extended that deadline to September 14, 1998, and the information was still not submitted in admissible form, despite the fact that Dr. MacKenzie examined plaintiff prior to that date, (6) Dr. Sultan did not examine plaintiff until one week after the magistrate judge had made his Report and Recommendation, and (7) plaintiff's counsel had previously been sanctioned in this action

for repeatedly failing to oppose defendants' summary judgment motion (*see,* Opinion and Order of Magistrate Judge Peck dated November 14, 1997). Simply put, plaintiff, represented by counsel, has had several opportunities to submit medical evidence in the proper form, his counsel has been sanctioned for his refusal to do so and has been warned of the consequences of continuing to do so.

IT IS HEREBY ORDERED that defendants' motion for summary judgment is granted and Magistrate Judge Peck's Report and Recommendation is affirmed. The Clerk of Court is directed to enter judgment dismissing the complaint.

SO ORDERED.

## REPORT AND RECOMMENDATION

PECK, United States Magistrate Judge.

Plaintiff Alexander Douglas alleges that the new owners of 17 Battery Place North fired him as building manager after they met him and discovered he was disabled. He brought suit under the Americans With Disabilities Act ("ADA") and the New York State Human Rights Law ("NYSHRL"), and for breach of contract. Defendants have moved for summary judgment. For the reasons set forth below, I recommend that defendants' summary judgment motion be granted because, *inter alia,* Douglas has failed to submit admissible medical evidence to show that he has a physical impairment that substantially limits one or more major life activities.

## FACTS

### Douglas' Employment at 17 Battery Place

Plaintiff Alexander Douglas suffers from legg perthes disease, spinal stenosis and chronic anxiety disorder. (Douglas Aff. Ex. E: 3/25/96 Letter from Dr. C. Ronald MacKenzie; Douglas Aff. ¶¶ 20–25.)

Douglas was employed as the building manager of 17 Battery Place in New York City from 1983 to 1986. (Douglas Aff. ¶ 3.) In January 1992, he was re-hired as building manager at 17 Battery Place. (Douglas·Aff. ¶¶ 7, 11.) Douglas did not have a written or oral employment contract—he was an employee at will. (Defs.' Rule 56.1 Stmt. ¶ 29;[1] Douglas Dep. at 205.) A new "regime" took over management of 17 Battery Place in August–September 1995. (*See* Douglas Aff. ¶¶ 14–15, 31; Enquist Aff. ¶¶ 2–3.) On December 7, 1995, Douglas was fired (Douglas Aff. ¶¶ 10, 12, 57; Douglas Dep. at 490; Defs.' Rule 56.1 Stmt. ¶¶ 13, 47)—for incompetence according to defendants, but according to Douglas as a result of disability discrimination.

### Douglas' Duties At 17 Battery Place

As Building Manager of 17 Battery Place between 1992 and 1995, "Douglas's duties were to '[o]versee[ ] the day-to-day operations of the property.'" (Defs.' Rule 56.1 Stmt. ¶ 30, quoting Douglas Dep. at 240–41.) Douglas spent 65% of his time at his desk and 35% of his time walking around the building. (Defs.' Rule 56.1 Stmt. ¶ 31; Douglas Dep. at 239.) Douglas' duties did not require any moving or lifting of objects. (Defs.' Rule 56.1 Stmt. ¶ 32; Douglas Dep. at 239.) Douglas' job description, set out in defendants' Exhibit 11, included: supervision of building staff; building appearance; mechanical equipment upkeep; building inspections; handling tenant complaints; trouble

---

1. Citations to Defendants' Rule 56.1 Statement also include the record references cited in the Rule 56.1 Statement. The Court notes that plaintiff Douglas' counsel did not file an opposition Rule 56.1 Statement as required by S.D.N.Y. Local Civil Rule 56.1(b), and therefore the statements in defendants' Rule 56.1 Statement are deemed admitted. *See* S.D.N.Y. Local Civil Rule 56.1(c); *see also, e.g., DiCola v. SwissRe Holding (N. Am.), Inc.,* 996 F.2d 30, 30–31 (2d Cir.1993) (citing *Maresco v. Evans Chemetics,* 964 F.2d 106, 111 (2d Cir.1992)); *AAI Recoveries, Inc. v. Pijuan,* 96 Civ. 4629, 1998 WL 336636 at *1 (S.D.N.Y. June 23, 1998); *Montalvo v. Sun Roc*

*Corp.,* 95 Civ. 5624, 179 F.R.D. 420, 1998 WL 214012 at *1 (S.D.N.Y. April 29, 1998); *Harmon v. Runyon,* 96 Civ. 6080, 1997 WL 786383 at *1 (S.D.N.Y. Dec.19, 1997); *Peter v. P.P. of New York, Inc.,* 96 Civ. 0538, 1997 WL 473978 at *1 (S.D.N.Y. Aug.20, 1997); *Rodriguez v. Kittles,* 92 Civ. 1154, 1996 WL 14442 at *1 (S.D.N.Y. Jan.16, 1996) (Stein, D.J.).

Nevertheless, despite plaintiff's counsel's failure to obey the Local Rules, where plaintiff Douglas has submitted admissible evidence on a point that contradicts defendants' Rule 56.1 Statement, the Court will not deem the facts in defendants' statement to be admitted.

shooting; etc. (Defs.' Rule 56.1 Stmt. ¶ 36; Defs.' Ex. 11; Douglas Dep. at 378–79.)

Douglas' medical condition did not prevent or affect his ability to perform his responsibilities at 17 Battery Place. (Defs.' Rule 56.1 Stmt. ¶ 50; Douglas Aff. ¶¶ 29–30; Douglas Dep. at 295–98, 301–02.) Thus, Douglas testified at his deposition:

Q. Mr. Douglas, in the time frame 1992 to 1995, did the legg perthes condition in any way affect your ability to do your job at 17 Battery Place North?

A. No.

. . . .

Q. Did you ask any employer in 1992 to 1995, for any sort of special treatment or accommodation on the basis of your legg perthes condition?

. . . .

A. The only accommodation that I had ever asked for is that—well, they agreed they were reimbursing me for my toll, they were taking care of me in that respect so I could bring my car in the city, so I could park.

. . . .

Q. Any other special treatment or accommodation that you asked from the 1992 to 1995 time frame on the basis of your legg perthes condition?

A. No.

. . . .

Q. Did the spinal stenosis in any way affect your ability to do your job at 17 Battery Place North in the 1992 to 1995 time frame?

A. No.

. . . .

Q. With respect to the stress and anxiety condition, and again, limiting ourselves to the 1992 through 1995 period, did this condition in any way affect your ability to do your job?

A. No.

(Douglas Dep. at 295–98, 301–02; *see also* Douglas Br. at 7; Cerulli Dep. at 72; Switzer Dep. at 44.)

In his affidavit in opposition to defendants' summary judgment motion, Douglas was equally emphatic: "Am I able to do the job of building manager or property manager? Yes I am." (Douglas Aff. ¶ 29.)[2] Douglas' brief further reiterates this:

Indeed, with a four year work history as the building manager at the same building for the same owner from January 1983 to December 1986, and having been re-employed in 1992, and having performed his job successfully for three more years, it would be implausible to suggest that he is unable to perform the tasks of a building or property manager because of his disabilities.

He can perform the required tasks, and his employment at Newmark since his termination, where he successfully manages five buildings, is but further proof.

(Douglas Br. at 7.)

### Douglas' Employment After His Termination

Douglas was unemployed from December 1995 until September 1996, when he began work as a property manager for Newmark & Co. Real Estate. (Douglas Aff. ¶ 16; Douglas Dep. at 519; Defs.' Rule 56.1 Stmt. ¶ 54.) Douglas' duties as property manager at Newmark are "basically" the same as his duties at 17 Battery Place, except that he has to travel between five Newmark buildings. (Defs.' Rule 56.1 Stmt. ¶¶ 55–56; Douglas Dep. at 538–41; Douglas Aff. ¶¶ 17–18 & Exs. C–D.)[3] Douglas admitted that his medi-

---

2. In fairness, Douglas' affidavit added: "Do I have severe limits on my ability to get around? Yes I do. For example, I drive to work every day, because I cannot walk or take public transportation. . . . As long as my employer recognizes that I move more slowly than most people and sometimes have particularly bad days, requiring me to walk on crutches, and that I frequently work longer hours at my job than another person might, then I can do my job at least as well as the next person. I have never claimed otherwise." (Douglas Aff. ¶¶ 29–30.)

3. Douglas asserts that his medical condition worsened between December 7, 1995 and September 1996 when he began work at Newmark. (Douglas Dep. at 519–20.)

cal conditions do not affect his ability to work at Newmark and do not require any accommodation:

Q. With respect to your employment at Newmark has any medical condition that you may have in any way affected your ability to do your job at Newmark?

A. No.

Q. Did you at any point in time since you began working for Newmark request any sort of special accommodation or special treatment on account of any medical condition you may have?

A. No.

(Douglas Dep. at 541–42; Defs.' Rule 56.1 Stmt. ¶¶ 58–59.) Indeed, Douglas responded "No" to the question on the Newmark application form, "Do you have any physical, mental or medical impairment . . . that would limit your job performance for the position for which you are applying?" (Defs.' Ex. 21; *see also* Douglas Dep. at 556–57.)

### *Douglas' Physical Restrictions*

According to Douglas, his medical conditions affect his walking and standing:

I can't walk that far. I can't walk a half a block, a block at any time without stopping for five, ten minutes, leaning to rest and then continue.

(Douglas Dep. at 102.) For that reason, he drives to work. (Douglas Dep. at 102.)

Douglas expanded on this in his affidavit, under the heading "My Physical Limitations and Restrictions":

28) As a result of the above conditions, I have the following limitations and restrictions throughout all of my daily activities:

a) I cannot walk more than one-half a street block without having to stop and wait for the pain or discomfort to subside.

b) I cannot run and I cannot lift anything.

c) I cannot put on my socks or tie my shoes. My wife does this for me.

d) I cannot function without substantial daily medication. Among many drugs, I presently take three percocets per day for pain.

e) I cannot attend any sporting event for I cannot sit on hard chairs or benches. I require special chairs and can endure only a limited sitting time.

f) I cannot walk anywhere without a cane to assist me. I own 15 canes.

g) I use crutches more frequently as the years go by, and now perhaps three times per month. I own 3 sets of crutches.

h) In addition to a cane, I walk with a decided limp, which is apparent to *anyone* who looks at me.

(Douglas Aff. ¶ 28, emphasis in original.) Despite his affidavit, at his deposition Douglas testified that he goes to see his son play in baseball, roller hockey and ice hockey league games, and indeed helps coach his son's baseball team. (Douglas Dep. at 375–76; Defs.' Rule 56.1 Stmt. ¶¶ 7–8.) Moreover, as discussed above, Douglas' alleged physical restrictions as to walking and standing do not prevent him from working as a building manager.

### *The Medical Evidence*

Surprisingly, Douglas has presented no admissible medical evidence as to his medical conditions. The only medical evidence in the original summary judgment record are two unsworn doctor letters, one from 1990 and the other from 1996. (Douglas Aff. Ex. E.)

Dr. Sultan's 1990 letter opines that Douglas "should be considered as having a total occupational disability." (Douglas Aff. Ex. E: 1990 Dr. Sultan Letter at 3.) The problem with this letter—aside from being inadmissible hearsay—is that it is from the 1989–1992 time period during which, based on Douglas' own deposition testimony, he was unable to work and was receiving Social Security disability benefits. (Douglas Dep. at 372–74.) Douglas was able to, and did, return to work in 1992 and stopped receiving Social Security disability benefits. (*Id.*) Thus, Dr. Sultan's letter, even were it not inadmissible hearsay, is of no help with respect to Douglas' medical condition in 1995.

The second unsworn (and therefore inadmissible hearsay) doctor's letter is dated March 25, 1996—about three months after

Douglas was fired—from Dr. C. Ronald MacKenzie, on letterhead from the Hospital for Special Surgery. (Douglas Aff. Ex. E: 3/25/96 Dr. MacKenzie Letter.) Dr. MacKenzie's letter reads in full:

> To Whom It May Concern:
>
> I am writing in the capacity of Mr. Douglas' physician to confirm that he suffers from a number of severe chronic orthopedic and medical problems. These include leg Perthes' Disease for which he has undergone a total hip replacement, Spinal Stenosis requiring lumbar spine surgery, and quite widespread arthritis for which he remains chronically symptomatic. In addition he suffers from a chronic anxiety disorder requiring daily medication.
>
> As a result of his physical condition and chronic conditions, *he does have some limitations in his functional capacity though does remarkably well. For instance, it is necessary from time to time for him to use a cane or occasionally a crutch to perform his customary work duties.*
>
> I trust this information will clarify Mr. Douglas' medical situation.

(*Id.,* emphasis added.)

Over defendants' objection, the Court gave Douglas and his counsel the benefit of the doubt and directed them to supply medical evidence in admissible form. The Court directed:

> The only medical evidence that plaintiff Douglas submitted in opposition to defendants' summary judgment motion, two doctors' letters (Douglas Ex. E), is inadmissible hearsay. Douglas' own testimony (deposition and affidavit) as to the alleged limits on his ability to walk, without supporting medical testimony, simply is not sufficient to establish his prima facie case under the ADA. *See, e.g., Johnson v. St. Clare's Hospital & Health Center,* 96 Civ. 1425, 1998 WL 236235 at *8 (S.D.N.Y. May 13, 1998) (Peck, M.J.), *aff'd,* 1998 WL 213203 (S.D.N.Y. April 30, 1998).

Douglas is to submit admissible medical evidence *by September 3, 1998* that his conditions substantially limit the major life activity of walking. If he does not, defendants' summary judgment will be granted. (8/21/98 Order.) [4]

Astonishingly, Douglas' counsel (George Osborne), submitted not a doctor's deposition or affidavit, but another version of a "To whom it may concern" letter from Dr. MacKenzie. Dr. MacKenzie's September 10, 1998 letter states in part:

> I am writing in the capacity of Mr. Douglas physician to confirm his functional and ambulatory incapacity arising from his severe chronic orthopedic condition.
>
> . . . .
>
> Over perhaps the past last five years he has had persistent low back and lower extremity symptomology which has limited his ambulatory capacity. Dependent on chronic pain relieving medication (narcotics) and anti-anxiety medication, he reports being able to walk with the use of a cane only one-half block without stopping. Although his symptoms vary in intensity to some degree based on the walking surface, his ambulation is significantly limited.

(9/10/98 Dr. MacKenzie letter.) [5]

### The Circumstances of Douglas' Termination from 17 Battery Place

Douglas attributes his termination to disability discrimination, stemming from two October 24, 1995 meetings at which representatives of or consultants for the building's new ownership "regime" saw Douglas walk in on crutches. (Douglas Aff. ¶ 47; Douglas Dep. at 41–43, 462–72.) Douglas testified:

> Q.  . . . . [C]ould you give me a date when this conversation took place?
>
> A.  October 24, 1995.
>
> Q.  So there was you, Mr. Cowan, Miss Lucerino and Mr. Thomas?
>
> A.  That I know of, to the best of my recollection, yes.

---

4. At Douglas' counsel's request, the Court extended the deadline for submission to September 14, 1998.

5. Counsel Osborne also submitted another copy of Dr. Sultan's 1990 letter, and various other medical letters or reports, all of which not only are hearsay, but do not address whether Douglas is limited in a major life activity.

Q. Where exactly was this?

A. Room 1414 at 17 Battery Place.

Q. What happened, was this a meeting?

A. I was settling into a meeting.

Q. What was said, if you recall?

A. I came into the meeting, *I was having a bad week, I was on crutches and when I opened the door, they were totally aghast.* They all sat back and Mr. Cowan asked me what had happened. *I said, "I have a bone disease and I have good days and I have bad days. This is one of my bad days,"* and I said, "It's been a very bad week," and to the extent that—*that's about it and then that's all that was said.*

Q. Did they respond?

A. *They just looked surprised when they seen me, you know, taken back.*

. . . .

Q. What did you do after the October 24 meeting?

A. Went back to my office with Ms. Lucerino and Mr. Thomassen and sat in my office.

Q. With both of them?

A. Yes.

Q. What, if anything, was said?

A. They were talking to me, that was the day I was on the crutches, when I went there to the room and Ms. Lucerino, Mr. Thomassen came back to my office because I believe they are both smokers, my office you are allowed to smoke, *we sat and talked about few questions as to, you know, in regards to my disabilities, what was wrong, "What is wrong with you," you know, "How is it,"* and I told her some days are good and bad.

Q. Ms. Lucerino asked you that?

A. *She seemed like she was a little concerned when I told her I said, "I have good days, bad days. Some days I'm on canes, crutches and some days I have nothing.* Those days are getting less and less as I'm getting older."

Q. *What, if anything else, was said about your medical condition?*

A. *At that time, nothing.*

Q. Did Mr. Cowan ask you anything?

A. Mr. Cowan, when I walked into the room on crutches, asked me what happened and I said to him, "I have a bone disease", I said, "I have good days and I have bad days."

*The three of them sat and looked at each other, started shaking their heads* because my back was to him as I went to sit down, I went in the room and I sat, one, two, three, I had to come down. I had to come down here, this is when they explained to me about the termination of the ladies.

. . . .

Q. Did you have any conversation with Mr. Cowan on that day about your medical condition?

A. The only thing when I walked into the room, like I said, and he asked me what I had, a bone disease and good days and bad days and just shaking their heads, you know, like, you know, I don't know what they thought.

Q. When you had this discussion about your medical condition, the three of them were in the room or just Mrs. Lucerino and Mr. Thomassen besides yourself?

A. You are looking [confused(?) ] yourself?

Q. Please explain.

A. I was summoned to Room 1414.

Q. Right.

A. I came to the room, I was on crutches, they asked me, "What is the problem?" I said, "I have a bone disease. I have good days and I have bad days. Some days I could walk around, crutches might be a week, couple days, some days I need a cane, some days I don't need anything." Like I just said, as I get older I need the cane more often, so I went there to the room and they were a little startled. They looked at me and said, "What happened?"

I said, "Nothing I have a bone disease," and I passed them and sat down at the table.

MR. OSBORNE [plaintiff Douglas' counsel]: I think you have answered the question for the fourth time.

(Douglas Dep. at 42–43, 465–68, emphasis added; *see also id.* at 469–72; Douglas Aff. ¶¶ 37–46; Cowan Dep. at 55, 98–99.)[6] Douglas' affidavit opposing summary judgment reiterated this description of the October 24, 1995 meeting (Douglas Aff. ¶¶ 39–41), but added a significant (if true) additional piece of information:

> I left the room at one point to get another ash tray and, away from the room longer than anticipated, while returning from the next room, I overheard Ms. Lucerino state that "We can't have someone who can hardly walk be responsible for this building."

(Douglas Aff. ¶ 44.)[7]

According to Douglas, "[i]mmediately after the above meeting a complete turnabout took place in the manner in which the owners and the consultants and the managers treated me." (Douglas Aff. ¶ 47.)

According to defendants, consultants for the new ownership interest evaluated Douglas' job performance and found it lacking. (*See* Defs.' Rule 56.1 Stmt. ¶¶ 37–42.) The consultants recommended that he be fired. (Defs.' Rule 56.1 Stmt. ¶ 42; *see also* Defs.' Br. at 26–33; Holliday Aff. ¶ 6; Lucerino Aff. ¶¶ 2–6; Holliday Dep. at 44–45, 68–80; Co-

wan Dep. at 55–57, 71–72; Defs.' Exs. 14, 16.) Douglas explains in detail that these evaluations were untrue and, in his view, pretextual. (*E.g.*, Douglas Aff. ¶¶ 52, 58–73; Douglas Br. at 3, 14–17; Cirulli Dep. at 33–72.) The Court need not set forth these facts in any more detail because, if defendants' summary judgment motion were to depend on a determination of whether the reasons for firing Douglas were pretextual, fact disputes would preclude summary judgment.

On December 5, 1995, Douglas wrote a letter to Cowan and others to request a meeting concerning disability discrimination. (Douglas Aff. ¶ 55; Defs.' Ex. 17; Defs.' Rule 56.1 Stmt. ¶ 48.) On December 7, 1995, Douglas was fired. (Douglas Aff. ¶ 57; Defs.' Rule 56.1 Stmt. ¶ 47.) According to defendants, the individual who decided to fire Douglas was Stephen P. Enquist, acting for the building owner through its managing general partner. (Defs.' Rule 56 .1 Stmt. ¶ 43; Enquist Aff. ¶¶ 10–11.) Enquist had never met or seen Douglas, was not aware of Douglas' medical condition, and was not aware of Douglas' December 5, 1995 letter, prior to deciding to terminate him. (Defs.' Rule 56.1 Stmt. ¶ 49; Enquist Aff. ¶ 11.)

### EEOC Proceedings and the Facts Concerning Who Employed Douglas

Douglas filed ADA claims with the EEOC, and received right to sue letters, with respect to: 17 Battery Place North Associates, Cohen & Levine, Belmarc Regal Management,

---

**6.** Douglas also testified that after the meeting, he found and copied a set of notes written by Mr. Cowan, which included a reference to Douglas: "5. Ask Al Douglas—discrimination—Age, handicapped." (Douglas Aff. ¶ 46 & Ex. H.) Cowan explained the note as follows: "That is with regard to asking attorneys about the fact we were probably going to be firing Al [Douglas], and what may happen if he were to raise a discrimination case." (Cowan Dep. at 107; *see also id.* at 101–12.)

**7.** The Court expresses grave doubts as to the veracity of this additional information, in light of Douglas' failure to testify to this alleged overheard statement at his deposition despite extensive deposition questioning about the October 24, 1995 meeting. (*See* Defs.' Reply Br. at 12–13.) *See, e.g., Raskin v. Wyatt Co.*, 125 F.3d 55, 63 (2d Cir.1997) ("To the extent that Raskin's earlier deposition testimony is at odds with his declaration, we follow the rule that 'a party may not

create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony.' ") (quoting *Hayes v. New York City Dep't of Corrections*, 84 F.3d 614, 619 (2d Cir.1996)); *Buti v. Impressa Perosa S.R.L.*, 935 F.Supp. 458, 471–72 (S.D.N.Y. 1996) (Schwartz, D.J. & Peck, M.J.) (citing cases), *aff'd*, 139 F.3d 98 (2d Cir.1998). Even without the allegedly overheard comment, however, Douglas' testimony about the October 24, 1995 meeting likely would be enough to raise an issue of fact as to whether the owner's consultants recommended that Douglas be fired because of his walking with crutches. Because of the Court's recommendation that defendants' summary judgment motion be granted without the need to reach that issue, however, the fact dispute—and veracity of Douglas' affidavit as to this overheard statement—is of no moment.

and Victor Capital Group. (Defs.' Exs. 26–28, 31; *see also* Cplt. Exs.) [8] He did not file EEOC charges against present defendants Victor Asset Management Partners LLC, Downtown Acquisition Partners L.P., or KE 17 Battery Place Management Inc. (*See* Defs.' Rule 56.1 Stmt. ¶ 27.)

According to defendants, 17 Battery Place North Associates L.P. ("17 BPNA") owned 17 Battery Place and employed Douglas. (Defs.' Rule 56.1 Stmt. ¶ 13; Enquist Aff. ¶¶ 2–8; Cerulli Aff. ¶¶ 2–4; Cowan Dep. at 100.) Defendants claim that the other defendants did not employ Douglas. (Defs.' Rule 56.1 Stmt. ¶¶ 14–21.) Douglas states that "[t]hroughout the 1992–1995 period I never knew which entity was my 'employer.'" (Douglas Aff. ¶ 14.) Douglas testified that he was employed by "[t]he ownership of the building at 17 Battery," but in response to the follow-up question of "who was the ownership of the building between 1992 and 1995," he responded that he did not know. (Douglas Dep. at 137.) His 1994 and 1995 W–2 statements, however, came from Cohen & Levine c/o Regal Management. (Douglas Aff. ¶ 14 & Ex. B.) His 1992 and 1993 W–2s came from 17 BPNA. (*Id.*)

## ANALYSIS

### I. *SUMMARY JUDGMENT STANDARDS*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.,* 949 F.2d 576, 580 (2d Cir.1991); *Johnson v. St. Clare's Hosp. & Health Ctr.,* 96 Civ. 1425, 1998 WL 236235 at *5 (S.D.N.Y. May 13, 1998) (sic, 1997) (Peck, M.J.), *aff'd,* 1998

WL 213203 (S.D.N.Y. April 30, 1998) (Mukasey, D.J.); *Morris v. Amalgamated Lithographers,* 994 F.Supp. 161, 167 (S.D.N.Y.1998) (Kaplan, D.J. & Peck, M.J.); *Hernandez v. New York City Law Dep't Corp. Counsel,* 94 Civ. 9042, 1997 WL 27047 at *6 (S.D.N.Y. Jan.23, 1997) (Peck, M.J.); *Burger v. Litton Indus., Inc.,* 91 Civ. 0918, 1996 WL 421449 at *7 (S.D.N.Y. April 25, 1996)(Peck, M.J.), *report & rec. adopted by* 1996 WL 609421 (S.D.N.Y. Oct.22, 1996).

The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment, here, the defendants. *See, e.g., Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 36 (2d Cir.1994); *Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994); *Johnson v. St. Clare's Hosp.,* 1998 WL 236235 at *5; *Morris v. Amalgamated Lithographers,* 994 F.Supp. at 167–68; *Hernandez v. New York City Law Dep't,* 1997 WL 27047 at *6; *Burger v. Litton,* 1996 WL 421449 at *7.

In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. at 2513; *see also Chambers v. TRM,* 43 F.3d at 36; *Gallo v. Prudential,* 22 F.3d at 1223; *Johnson v. St. Clare's Hosp.,* 1998 WL 236235 at *5; *Morris v. Amalgamated Lithographers,* 994 F.Supp. at 167–68; *Hernandez v. New York City Law Dep't,* 1997 WL 27047 at *6. The Court draws all inferences in favor of the nonmoving party—here, Douglas—only after determining that such inferences are reasonable, considering all the evidence presented. *See, e.g., Apex Oil Co. v. DiMauro,* 822 F.2d 246, 252 (2d Cir.), *cert. denied,* 484 U.S. 977, 108 S.Ct. 489, 98 L.Ed.2d 487 (1987); *Johnson v. St. Clare's Hosp.,* 1998 WL 236235 at *5; *Morris v. Amalgamated Lithographers,* 994 F.Supp. at 167–68; *Hernandez v. New York City Law Dep't,* 1997 WL 27047 at *6; *Burger v. Lit-*

---

8. Douglas also filed EEOC claims and received right to sue letters as to Arthur G. Cohen and Anton Cirulli. (Defs.' Exs. 29–30.) Plaintiff Douglas's claims in this suit against Cohen and Cirulli were dismissed with prejudice pursuant to Stipulation & Order. (*See* Defs.' Exs. 8, 9.)

*ton,* 1996 WL 421449 at *7. "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Chambers v. TRM,* 43 F.3d at 37; *see also, e.g., Johnson v. St. Clare's Hosp.,* 1998 WL 236235 at *5; *Morris v. Amalgamated Lithographers,* 994 F.Supp. at 167–68; *Hernandez v. New York City Law Dep't,* 1997 WL 27047 at *6.

In considering a motion for summary judgment, the Court is not to resolve contested issues of fact, but rather is to determine the existence of any disputed issues of material fact. *See, e.g., Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 58 (2d Cir.1987); *Knight v. United States Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987); *Johnson v. St. Clare's Hosp.,* 1998 WL 236235 at *5; *Morris v. Amalgamated Lithographers,* 994 F.Supp. at 167–68; *Ruiz v. Selsky,* 96 Civ.2003, 1997 WL 137448 at *3 (S.D.N.Y. March 24, 1997) (Peck, M.J.). To evaluate a fact's materiality, the substantive law determines which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510; *Johnson v. St. Clare's Hosp.,* 1998 WL 236235 at *5; *Morris v. Amalgamated Lithographers,* 994 F.Supp. at 167–68. While "disputes over facts that might affect the outcome of a suit under the governing law will properly preclude the entry of summary judgment[,][f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citations omitted); *see also, e.g., Knight,* 804 F.2d at 11–12; *Johnson v. St. Clare's Hosp.,* 1998 WL 236235 at *5; *Morris v. Amalgamated Lithographers,* 994 F.Supp. at 167–68; *Shaw v. City of New York,* 95 Civ. 9325, 1997 WL 187352 at *2 (S.D.N.Y. April 15, 1997) (Peck, M.J.); *Ruiz v. Selsky,* 1997 WL 137448 at *3.

When a case turns on the intent of one party, as employment discrimination claims often do, a "trial court must be cautious about granting summary judgment." *Gallo v. Prudential,* 22 F.3d at 1224; *see also, e.g., Chambers v. TRM,* 43 F.3d at 40; *Morris v.* *Amalgamated Lithographers,* 994 F.Supp. at 168; *Hernandez v. New York City Law Dep't,* 1997 WL 27047 at *7. Because the employer rarely leaves direct evidence of its discriminatory intent, the Court must carefully comb the available evidence in search of circumstantial proof to undercut the defendants' explanations for its actions. *E.g., Gallo v. Prudential,* 22 F.3d at 1224; *Hollander v. American Cyanamid Co.,* 895 F.2d 80, 85 (2d Cir.1990); *Morris v. Amalgamated Lithographers,* 994 F.Supp. at 168; *Hernandez v. New York City Law Dep't,* 1997 WL 27047 at *7. Nonetheless, when the defendant provides convincing evidence to explain its conduct and the plaintiff's argument consists of purely conclusory allegations of discrimination, the Court may conclude that no material issue of fact exists and it may grant summary judgment to the defendant. *See, e.g., Stern v. Trustees of Columbia Univ.,* 131 F.3d 305, 312 (2d Cir.1997); *Meloff v. New York Life Ins. Co.,* 51 F.3d 372, 375 (2d Cir.1995); *Morris v. Amalgamated Lithographers,* 994 F.Supp. at 168; *Hernandez v. New York City Law Dep't,* 1997 WL 27047 at *7; *Burger v. Litton,* 1996 WL 421449 at *7; *Engelmann v. National Broad. Co.,* 94 Civ. 5616, 1996 WL 76107 at *7 (S.D.N.Y. Feb.22, 1996). In other words, to defeat summary judgment, "the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Stern v. Trustees of Columbia Univ.,* 131 F.3d at 312; *see also, e.g., Fisher v. Vassar College,* 114 F.3d 1332, 1339 (2d Cir.1997) (en banc), *cert. denied,* —— U.S. ——, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998); *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 714 (2d Cir. 1996) (plaintiff must "produce not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the employer were false, and that more likely than not [discrimination] was the real reason for the discharge.' "); *Morris v. Amalgamated Lithographers,* 994 F.Supp. at 168; *Feinson v. New School For Social Research,* 95 Civ. 763, 1997 WL 742532 at *8 (S.D.N.Y. Dec.1, 1997) ("plaintiff must ... carry the

ultimate burden of persuasion, by demonstrating by a preponderance of the evidence that improper discrimination was a determinative factor motivating the employer's conduct"); *Richardson v. Newburgh Enlarged City Sch. Dist.*, 984 F.Supp. 735, 744 (S.D.N.Y.1997); *Cutler v. Parfums Givenchy, Inc.*, 96 Civ. 9070, 1997 WL 634171 at *2–3 (S.D.N.Y. Oct.15, 1997); *Hernandez v. New York City Law Dep't*, 1997 WL 27047 at *7; *Scaria v. Rubin*, 94 Civ. 3333, 1996 WL 389250 at *5 (S.D.N.Y. July 11, 1996) (Peck, M.J.), *aff'd*, 117 F.3d 652, 654 (2d Cir.1997).

## II. *DOUGLAS' ADA CLAIMS AGAINST DEFENDANTS DOWNTOWN ACQUISITION PARTNERS, KE 17 BATTERY PLACE MANAGEMENT AND VICTOR ASSET MANAGEMENT PARTNERS MUST BE DISMISSED BECAUSE DOUGLAS NEVER FILED EEOC CHARGES AGAINST THEM AND HIS CLAIM AGAINST VICTOR CAPITAL GROUP MUST BE DISMISSED BECAUSE IT DID NOT EMPLOY DOUGLAS*

### A. *Filing of EEOC Charge*

■ Although Douglas has sued seven different entities as his "employer" (*see* Cplt.), it is undisputed that he never filed charges with the EEOC against defendants Downtown Acquisition Partners, KE 17 Battery Place Management and Victor Asset Management Partners. (*See* Defs.' Rule 56.1 Stmt. ¶ 27; Defs.' Exs. 26–31; Cplt. Exs.)

It is black-letter law that filing a charge with the EEOC is a prerequisite to a private civil action under Title VII or the ADA. *See, e.g.*, 42 U.S.C. § 12117(a) (incorporating by reference 42 U.S.C. § 2000e–5, which requires that in all Title VII cases a charge be first filed with the EEOC); *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788–89 (5th Cir. 1996); *Doyle v. Columbia–Presbyterian Medical Center*, 97 Civ. 5487, 1998 WL 430551 at *2 (S.D.N.Y. July 29, 1998); *Tavarez v. Chemical Bank*, 97 Civ. 3681, 1998 WL

337071 at *3 (S.D.N.Y. June 25, 1998); *Garcia v. Coca–Cola Bottling Co.*, 96 Civ. 6072, 1998 WL 151032 at *2 (S.D.N.Y. March 31, 1998); *Rodriguez v. Gary Plastic Packaging Corp.*, 95 Civ. 4900, 1997 WL 16665 at *3–4 (S.D.N.Y. Jan.16, 1997); *Sank v. City Univ. of New York*, 94 Civ. 0253, 1995 WL 314696 at *4 (S.D.N.Y. May 24, 1995); *Bent v. Mount Sinai Med. Ctr.*, 882 F.Supp. 353, 355–56 (S.D.N.Y.1995); *see also, e.g., Butts v. City of New York Dep't of Hous. Preservation & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993) ("When a plaintiff fails to file a timely charge with the EEOC [in a Title VII case], the claim is timebarred.... A district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge."); *Hernandez v. New York City Law Dep't Corp. Counsel*, 94 Civ. 9042, 1997 WL 27047 at *8 (S.D.N.Y. Jan.23, 1997) (Peck, M.J.) (citing authorities).

Accordingly, since plaintiff Douglas did not file EEOC charges against them, this Court lacks jurisdiction over his ADA claim against defendants Downtown Acquisition Partners, KE 17 Battery Place Management and Victor Asset Management Partners, and they should be granted summary judgment dismissing the ADA claim.[9]

### B. *Who Employed Douglas*

■ Defendants also move for dismissal of the ADA and NYSHRL claims against all defendants except 17 Battery Place North Associates, on the ground that only that entity employed Douglas. (*See, e.g.*, Defs.' Br. at 14–15.) "The question of whether an employment relationship exists in fact is determined primarily by whether the hiring party controls the manner and means by which work is performed; that test, known at 'the control test,' involves such issues as who provides benefits, transfers, promotes, disciplines, establishes work schedules and directs work to be performed." *Pilman v.*

---

9. Douglas' opposition papers fail to address his claims under the New York State Human Rights Law. Indeed, the only mention in his opposition brief of the New York State Human Rights Law is a single sentence noting that his complaint asserted claims under the ADA and the NYSHRL. (Douglas Br. at 3.) The Court therefore deems his claims against these three defendants under the NYSHRL to have been abandoned. *See* Point IV below.

*New York City Hous. Auth.*, 96 Civ. 3893, 1996 WL 665856 at *1 (S.D.N.Y. Nov.14, 1996) (Stein, D.J.) (citing cases). Douglas has stated that he never really knew who employed him. (Douglas Aff. ¶ 14; Douglas Dep. at 137.) He did, however, submit W–2s from Cohen & Levine c/o Belmarc Regal Management. (Douglas Aff. ¶ 14 & Ex. D.) The Court therefore declines to grant summary judgment to defendants Cohen & Levine and Belmarc Regal Management on this ground, because of factual issues that would require trial resolution. Since there is no evidence that defendant Victor Capital Group was Douglas' employer, it is entitled to summary judgment on this ground.

## III. DOUGLAS HAS NOT PRESENTED ADMISSIBLE MEDICAL EVIDENCE THAT HE IS "DISABLED" UNDER THE ADA

In analyzing claims under the ADA, courts apply the three step analytical framework first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and later refined in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). *See, e.g., Duprey v. Prudential Ins. Co. of Am.*, 910 F.Supp. 879 (N.D.N.Y.1996) (applying *McDonnell Douglas* analysis in ADA case); *Johnson v. St. Clare's Hosp. & Health Ctr.*, 96 Civ. 1425, 1998 WL 236235 at *6 (S.D.N.Y. May 13, 1998) (sic, 1997) (Peck, M.J.), *aff'd*, 1998 WL 213203 (S.D.N.Y. April 30, 1998) (Mukasey, D.J.). The three-step analysis is as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Burdine*, 450 U.S. at 252–53, 101 S.Ct. at 1093 (quoting and citing *McDonnell Douglas*); *see also, e.g., Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 722 (2d Cir.1994), *cert. denied*, 513 U.S. 1147, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995); *Johnson v. St. Clare's Hosp.*, 1998 WL 236235 at *6; *Hernandez v. New York City Law Dep't Corp. Counsel*, 94 Civ. 9042, 1997 WL 27047 at *12 (S.D.N.Y. Jan.23, 1997) (Peck, M.J.) (citing cases).

■ To establish a prima facie case under the ADA, Douglas "must show: (1) that [he] is a handicapped person under the disability acts; (2) that [he] is otherwise qualified to perform [his] job; [and] (3) that [he] was discharged because of [his] handicap." *Wernick v. Federal Reserve Bank of New York*, 91 F.3d 379, 383 (2d Cir.1996); *see also, e.g., Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 135 (2d Cir.1995); *Heilweil v. Mount Sinai Hosp.*, 32 F.3d at 722; *Johnson v. St. Clare's Hosp.*, 1998 WL 236235 at *7. Douglas' brief agrees with this recitation of the standard—indeed, Douglas' brief only cites case law for this general proposition, and does not cite any other case law in the entire twenty-three page brief. (Douglas Br. at 4.)

■ "In order to demonstrate that [he] is handicapped [under the ADA], [he] must prove two elements: (1) that [he] has a physical or mental impairment; and (2) that such impairment substantially limits one or more of [his] major life activities." *Wernick v. Federal Reserve Bank of New York*, 91 F.3d at 383; *accord, e.g.*, 42 U.S.C. § 12102(2)(A) (defining "disability"); *Heilweil v. Mount Sinai Hosp.*, 32 F.3d at 722; *Johnson v. St. Clare's Hosp.*, 1998 WL 236235 at *7.

■ It is not really disputed that Douglas has a physical impairment that requires him, at least on occasion, to walk with a cane or crutches. (*See* Defs.' Br. at 19.) The parties' dispute, however, whether that impairment substantially limits one or more major life activities. Not every physical or medical impairment is an ADA disability, because not every physical or medical impairment substantially limits a major life activity. *See, e.g.*, 20 C.F.R. Pt. 1630, App. (1998) ("Many impairments do not impact an individual's life to the degree that they constitute disabling impairments. An impairment rises to the

level of disability if the impairment substantially limits one or more of the individual's major life activities."); *Ryan v. Grae & Rybicki*, 135 F.3d 867, 870 (2d Cir.1998) ("Although almost any impairment may, of course, in some way affect a major life activity, the ADA clearly does not consider every impaired person to be disabled. Thus, in assessing whether a plaintiff has a disability, courts have been careful to distinguish impairments which merely affect major life activities from those that substantially limit those activities."); *Reeves v. Johnson Controls World Servs., Inc.*, 140 F.3d 144, 151 (2d Cir.1998); *Roth v. Lutheran Gen. Hosp.*, 57 F.3d 1446, 1454 (7th Cir.1995) ("not every impairment that affect[s] an individual's major life activities is a substantially limiting impairment"); *Aquinas v. Federal Express Corp.*, 940 F.Supp. 73, 78 (S.D.N.Y.1996) (Stein, D.J.); *Penchishen v. Stroh Brewery Co.*, 932 F.Supp. 671, 674 (E.D.Pa.1996) ("It is well established that not every physical impairment is a disability, because not every impairment substantially limits a life activity."), *aff'd*, 116 F.3d 469 (3d Cir.), *cert. denied*, — U.S. ——, 118 S.Ct. 178, 139 L.Ed.2d 119 (1997); *Nedder v. Rivier College*, 908 F.Supp. 66, 75 (D.N.H.1995).; *Williams v. City of Charlotte*, 899 F.Supp. 1484, 1488 (W.D.N.C.1995).

Again, the evidence is undisputed that Douglas' condition does not substantially limit his ability to work. *See* discussion at pages 3–5 above.

Thus, the issue on this motion is whether there is admissible evidence that Douglas' condition substantially limits any other major life activity. Douglas' principal contention is that it substantially limits his ability to walk: "I cannot walk more than one-half a street block without having to stop and wait for the pain or discomfort to subside." (Douglas Aff. ¶ 28(a); *see also* Douglas Dep. at 102.) He added: "I cannot walk anywhere without a cane to assist me.... I use crutches more

frequently as the years go by.... In addition to a cane, I walk with a decided limp, which is apparent to anyone who looks at me." (Douglas Aff. ¶¶ 28(f)-(h).)

Walking is a major life activity. *See, e.g.,* 29 C.F.R. § 1630.2(i) ("Major Life Activities means functions such as caring for oneself, performing manual tasks, *walking*, seeing, hearing, speaking, breathing, learning, and working.") (emphasis added); *see also, e.g., Reeves v. Johnson Controls World Servs.,* 140 F.3d at 152 (walking is a per se major life activity); *Meling v. St. Francis College*, 3 F.Supp.2d 267, 273 (E.D.N.Y.1998); *Nedder v. Rivier College*, 908 F.Supp. at 75.

Douglas, however, has not submitted any *admissible* medical evidence to support his claim that he cannot walk without a cane or crutches and is physically impaired as to walking.

◼ The only medical evidence he submitted, several doctor letters (*see* pages 7–9 above), are inadmissible hearsay, and therefore may not be considered in opposition to a summary judgment motion. *See, e.g.,* Fed. R.Civ.P. 56(e);[10] *United States v. All Right, Title & Interest in Real Property & Appurtenances,* 77 F.3d 648, 657–58 (2d Cir.) ("submission of [an] unsworn letter was an inappropriate response to the ... motion for summary judgment, and the factual assertions made in that letter were properly disregarded by the court"), *cert. denied,* — U.S. ——, 117 S.Ct. 67, 136 L.Ed.2d 28 (1996); *Nasrallah v. Helio De,* 96 Civ. 8727, 1998 WL 152568 at *4 (S.D.N.Y. April 2, 1998) (unsworn medical reports are "patently not competent evidence" and are technically inadmissible to oppose a summary judgment motion); *DeLatorre v. Town of Marlborough,* No. 95–CV–1262, 1997 WL 135899 at *4–5 (N.D.N.Y. March 13, 1997); *Dukes v. City of New York,* 879 F.Supp. 335, 343 (S.D.N.Y. 1995) ("unsworn statements are not admissible to controvert a summary judgment mo-

---

**10.** Rule 56(e) provides that:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matter stated therein.... When a motion for summary judgment

is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

tion"); *Counihan v. Azadeh*, 90 Civ. 3876, 1992 WL 47975 at *2 (S.D.N.Y. March 4, 1992) ("an attorney's affidavit and an unsworn medical report standing alone are not evidentiary proof admissible in form to substantiate a claim [regarding] serious injury").

. Douglas' testimony as to the (alleged) limits on his ability to walk, without supporting medical testimony, simply is not sufficient to establish his prima facie case under the ADA. *See, e.g., Heilweil v. Mount Sinai Hosp.*, 32 F.3d at 723 (Plaintiff "declares that . . . her disability made it impossible to work in any poorly-ventilated place. . . . No medical proof substantiates this assertion. And, to defeat a motion for summary judgment a plaintiff cannot rely on 'conjecture or surmise. . . .'"); *Johnson v. St. Clare's Hosp.*, 1998 WL 236235 at *8 (plaintiff failed to provide medical evidence that his status as a recovering alcoholic and his need to avoid stress limits major life activity); *Smith v. DataCard Corp.*, 9 F.Supp.2d 1067, 1076 (D.Minn.1998) (granting summary judgment where plaintiff failed to provide any competent medical evidence that she had carpal tunnel syndrome and was physically impaired); *Ivaniuc v. Hauer Knitting Mills, Inc.*, No. 94 CV 5909, 1998 WL 57077 at *6 (E.D.N.Y. Feb.5, 1998) ("Plaintiff has offered no evidence, other than his self-serving statements, . . . showing that his employment is substantially limited. He has offered no medical evidence whatsoever as to his disability. As such, his bare assertions that he is unable to work . . . do not render him disabled under the case law."); *Hirsch v. National Mall & Serv., Inc.*, 989 F.Supp. 977, 981–82 (N.D.Ill.1997) (granting summary judgment on ADA claim where plaintiff "points to no medical records or other affirmative evidence to show exactly how [plaintiff] was impaired in his daily activities"); *McIntosh v. Brookdale Hosp. Med. Ctr.*, 942 F.Supp. 813, 816 (E.D.N.Y.1996) (instructing plaintiff to submit medical evidence of disability and granting summary judgment for defendant where such evidence did not show a cognizable disability), *aff'd*, 125 F.3d 844 (2d Cir.1997); *Taylor v. Dover Elevator Sys., Inc.*, 917 F.Supp. 455, 460–61 (N.D.Miss.1996)(granting summary judgment where "the record is devoid of any summary

judgment evidence, *i.e.*, medical diagnosis," to support plaintiff's claim of an emotional impairment); *Farley v. Gibson Container, Inc.*, 891 F.Supp. 322, 326 (N.D.Miss.1995) (granting summary judgment for defendant where plaintiff "presented absolutely no medical reports or other objective evidence substantiating his claim that his injury and subsequent surgery left him with a condition which rises to the level of a physical impairment. . . . Employers should not be expected to recognize a physical impairment solely on an employee's 'say-so'"); *Aucutt v. Six Flags Over Mid–Am., Inc.*, 869 F.Supp. 736, 744 (E.D.Mo.1994) (granting defendant summary judgment where the "only evidence before the Court [was] plaintiff's unsubstantiated claim"; there were "no medical reports substantiating plaintiff's claim as to his alleged medical condition or any objective affirmative evidence that provides this Court with some indication as to exactly how plaintiff is allegedly impaired. . . . There is absolutely no evidence before this Court which connects plaintiff's alleged disability to any impairment of normal everyday activities or impairment of job-related duties."), *aff'd*, 85 F.3d 1311, 1318 (8th Cir.1996) (plaintiff "has not presented any evidence indicating that his angina, high blood pressure, and coronary artery disease places a significant restriction on his ability to perform any" major life activity); *but cf. Latos v. County of Cook*, No. 96 C 1369, 1998 WL 142401 at *3 (N.D.Ill. March 24, 1998) (plaintiff's "conclusory statement" that she is substantially limited in walking, despite absence of supporting expert medical evidence, sufficient to survive summary judgment motion where defendants deposed plaintiff and one of her doctors "and has offered no evidence to contradict [plaintiff's] testimony that she is substantially limited in walking").

Douglas doubtless will say, on objections to this Report, that he can convert Dr. MacKenzie's letters into an affidavit and thus have admissible medical evidence. That is true. It is why the Court issued its August 21, 1998 Order, advising Douglas and his counsel that the doctors' letters submitted were inadmissible hearsay, that Douglas' testimony alone is not sufficient, and that unless Douglas submitted *admissible* medical evi-

dence, defendants' summary judgment motion would be granted. (*See* 8/21/98 Order, quoted at p. 384 above.) Much to the Court's surprise, in response to this clear second chance Douglas' counsel, George Osborne, again submitted only hearsay letters. The Court should not have to—and this Judge will not—give counsel Osborne yet a third chance. Plaintiff Douglas' remedy, of course, is a malpractice action against counsel Osborne. *See also* fn. 12 below.[11]

Accordingly, I recommend that defendants' summary judgment motion be granted for Douglas' failure to make out a prima facie case, that is, his failure to submit any admissible medical evidence to demonstrate that his impairment substantially limits a major life activity.

## IV. DOUGLAS HAS ABANDONED HIS NYSHRL, RETALIATION, CONTRACT AND ANY OTHER CLAIMS ASSERTED IN HIS COMPLAINT

■ In addition to his ADA discrimination claim, Douglas' complaint asserted claims: for retaliation, under the NYSHRL and for breach of employment contract. Defendants' summary judgment motion specifically addressed all of these claims. (*See* Defs.' Br. at 40–44; Defs.' Reply Br. at 6–7.) Douglas' opposition papers, however, addressed none of these claims. The only mention of the NYSHRL in Douglas' opposition papers was a passing reference that his complaint was brought under both the ADA and the NYSHRL (Douglas Br. at 3), and he never even mentions any retaliation or contract claim in his brief or affidavit. Thus, the Court deems all of the remaining claims in the complaint to be abandoned, and recommends that defendants be granted summary judgment dismissing these claims. *See, e.g., Singleton v. City of Newburgh,* 1 F.Supp.2d 306, 312 (S.D.N.Y.1998) (where claim was alleged in the complaint but "not raised elsewhere in the record," court deems claim "abandoned" and grants defendants' summary judgment motion); *National Communications Ass'n, Inc. v. American Tel. & Tel. Co.,* 92 Civ. 1735, 1998 WL 118174 at *28 (S.D.N.Y. March 16, 1998) (where plaintiff did not address claim in response to defendant's summary judgment motion, claim deemed "abandoned" and defendant granted summary judgment); *Anti–Monopoly, Inc., v. Hasbro, Inc.,* 958 F.Supp. 895, 907 & n. 11 (S.D.N.Y.) ("the failure to provide argument on a point at issue constitutes abandonment of the issue"), *aff'd,* 130 F.3d 1101 (2d Cir. 1997); *petition for cert. filed,* 66 USLW 3759 (April 1, 1998); *Ortho Pharm. Corp. v. Cosprophar, Inc.,* 828 F.Supp. 1114, 1129 (S.D.N.Y.1993) (claim dismissed where plaintiff "appears to have abandoned this claim, having failed to argue the claim in its posttrial memo or in its response papers once [defendant] had addressed the issues in its own brief"), *aff'd,* 32 F.3d 690 (2d Cir.1994).[12]

■ Moreover, his breach of contract claim clearly fails on the merits as well. He admits that he had no written contract. (Douglas Dep. at 205; *see also* Defs.' Ex. 10:

---

**11.** In the event the District Judge were inclined to give Douglas and counsel that third chance, despite this Report and Recommendation, I suggest that it be conditioned on Osborne paying a hefty sanction to defendants and/or the Clerk of Court. The Court further notes that if plaintiff were found to have established a prima facie case, I would have recommended denial of the remaining defendants summary judgment motion on Douglas' ADA claim, because of factual disputes about whether defendants fired Douglas because of his disability, and whether defendants' explanation of the firing (*i.e.*, job performance) was a pretext for discrimination.

**12.** Even as to the ADA, the only cases Douglas' counsel cited were for the basic proposition as to the elements of an ADA case. (*See* Defs. Br. at 4.) The Court notes that if Douglas' counsel had pursued a retaliation claim, or if the complaint had asserted an ADA claim under the ADA prong covering someone regarded as having an impairment, 42 U.S.C. § 12102(2)(C); 29 C.F.R. § 1630.2(g)(3), which the complaint did not, those claims might well have survived summary judgment.

The Court further notes that Douglas' counsel's conduct caused the Court to publicly censure and sanction him earlier in this case. *Douglas v. Victor Capital Group,* 96 Civ. 6557, 1997 WL 716912 (S.D.N.Y. Nov.17, 1997) (Peck, M.J.). The Court need not decide, however, whether the weakness of Douglas' opposition papers is the result of the weakness of Douglas' case, Douglas' and/or his counsel's strategy, or Douglas' counsel's deficiencies. Any deficiencies on the part of Douglas' counsel can and should be addressed by Douglas through a malpractice action against counsel.

Plaintiff's Response to Rule 34 Document Request, ¶ 5 ("plaintiff had no 'contract of employment' with any defendant").) He failed to respond to defendants' Rule 56.1 Statement's claim that he had no written or oral contract. (Defs.' 56.1 Stmt. ¶ 29.) S.D.N.Y. Local Rule 56.1(c) clearly states that: "All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." *See also* cases cited at page 2 n. 1 above. Thus, since Douglas had no written or oral contract, he was an employee at will, and can have no breach of contract claim under New York law. *See, e.g., Sherman v. HarperCollins Publishers, Inc.*, 98 Civ. 2809, 1998 WL 437158 at *3–4 (S.D.N.Y. July 31, 1998) (citing cases).

### CONCLUSION

For the reasons set forth above, I recommend that the Court grant defendants' summary judgment motion.

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Sidney H. Stein, 500 Pearl Street, Room 1010, and to the chambers of the undersigned, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Stein. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).